MULDON and MONTGOMERY *against* WHITLOCK, impleaded
with JENKINS and others.

M and B sold   ASSUMPSIT, for stores, furnished by the plaintiffs, for the
stores for a
ship, to F and ship *Cadmus,* whereof, it was admitted, the defendants, *Fred-*
S, the ship's *erick Jenkins* and *Matthew Jenkins,* (trading under the firm
husbands, (on
a credit of 4 of *Frederick Jenkins & Son*) and the other defendants, *Wm.*
months,) who, *Whitlock, jun.* and *Frederick William Jenkins,* (trading un-
with W and J,
were owners der the firm of *Whitlock & Jenkins*) were owners.   The
of the ship. M
and B, in their cause was tried before his honour the late Chief Justice
original entry *Spencer,* at the sittings in *New-York,* on the 15th June, 1821.
of the account,
charged these *John A. Seaman,* a witness for the plaintiffs, testified, that he
stores to ALL was a clerk to the plaintiffs, in *Nov.* 1818; that the stores,
the owners, by
name. A few in question, were ordered by *Frederick Jenkins & Son,* and
days after the
sale, they ren- were delivered on board the ship, on the 20th day of *No-*
dered two bills
to F and S, charging *them only,* and about 2 months after the sale, took the sole note of
F and S, at an extended   credit of 8 months, giving a  receipt for the note,  *as in full* for
the stores.   This note not being paid, and F and S becoming insolvent ; *held,* that the oth-
er owners were not thereby discharged, but were liable, in assumpsit, for the original con-
sideration.
    Being originally liable, the subsequent delivery of the bills charging the ship's husbands
alone, did not exonerate the other owners ;
    Nor were they discharged by taking the note ;
    Which, being for a precedent debt, is not a satisfaction, until actually paid ; unless ex-
pressly agreed to be received as payment.
    The receipt of the note, *in full, &c.* was not evidence of such an agreement.
    It makes no difference, in such a case, whether the plaintiffs knew that there were other
owners, at the time of the sale, or not.
    But if, in consequence of such receipt being given, the other owners had allowed the
note, in account with the ship's husbands, or were otherwise injured in their dealings with
them, upon the credit of the receipt, this would have worked their discharge.
    *Et semble,* that such prejudice should be shewn affirmatively by the defendant, and will
not be intended.
    The general duty of the ship's husband considered.

*vember*, 1818, amounting to $2040,71 ; that the stores were sold at a credit of 4 months, the usual credit of the plaintiffs ; and were charged, in the plaintiffs' books, to *the ship Cadmus, for acc. of Frederick Jenkins & Son*, and *Whitlock & Jenkins* ; that this was the original entry made by *Montgomery*, at the time, and was copied from the Captain's list; that two bills, of the goods in question, were afterwards rendered by the plaintiffs, in the hand writing of one of them, to *Frederick Jenkins & Son*, headed as follows: " *Novr.* 20, 1818, Ship Cadmus, acc. Messrs. Frederick Jenkins & Son, to Muldon and Montgomery, Dr.*" that, on the 12*th January*, 1819, the plaintiffs took from *Frederick Jenkins & Son*, their note, dated 20*th November*, 1818, payable in twelve months from the date, for the amount of the stores, including eight months interest thereon, and gave a receipt, in the words and figures following : " *Recd. New-York, 12th Jany.* 1819, of *Messrs. Frederick Jenkins & Son*, their note, of 20*th Novr.* last, at twelve months, for two thousand one hundred and thirty five $\frac{95}{100}$ dolls. *in full* for stores for ship *Cadmus*." (Signed) " *Muldon & Montgomery*." The same witness also proved a letter, (then produced) to be in the hand writing of *Muldon*, one of the plaintiffs, which letter is in these words : " *New-Yor* , 25*th June*, 1819. *F. Jenkins*, Esqr. Dr. Sir, From the suggestion of a mutual friend of ours, I'm induced to address you on the subject of the accounts between us. As respects the stores of the *Cadmus*, the amount of which is large, they were put up at the usual credit. And, for the accommodation of your house, took your note, with eight months interest, for the amt. which, in the opinion of us, at least, should be considered *confidential*. The stores put up for the *Louisa* was due the 4th inst. which, had we taken a note for, would have been paid for also. Under these circumstances, I would wish your opinion, as the loss to us, with those already sustained, will be insupportable. If, in your opinion, they ought to come within that peal, you will much oblige me by making it known to me and the ass's. by return of mail. Self obliges me to make this application, as I cannot see the difference it will make in the arrangement of

MULDON
v
WHITLOCK.

your affairs generally. You must be the best judge, however. With best wishes for you, am, Dear Sir, sincerely your friend, *M. Muldon.*" *David W. Raymer*, another witness for the plaintiffs, testified, that he was a clerk to the house of *Frederick Jenkins & Son*, in 1818 and 1819 ; that *Whitlock & Jenkins* were a separate and distinct house, doing business on their own account ; that *Frederick Jenkins & Son* were ship's husbands for the *Cadmus* ; that, within a few days after the stores were furnished, *Frederick Jenkins & Son* rendered to *Whitlock & Jenkins* an account of the disbursements of the ship. in which was included the amount of the stores in question, but which account was never settled between *Jenkins* and *Son* and *Whitlock* and *Jenkins*, nor any payment made by *Whitlock* and *Jenkins* to *Jenkins & Son*, on account of the stores ; that *Frederick Jenkins & Son* failed in *June*, 1819. *William Scott*, a witness for the defendants, testified, that the plaintiffs admitted to him, that they knew *Whitlock & Jenkins* to be part owners of the *Cadmus*, when the stores were furnished.

Upon this evidence, the counsel of the defendants, *Whitlock & Jenkins*, insisted, first, that the credit was originally given exclusively to *Frederick Jenkins & Son :* but, secondly, that, if it were otherwise, yet, they were discharged by the acts of the plaintiffs, in transferring the charge to that house, individually, and dealing with them for an extension of credit, and taking their note, and giving the receipt. His honour the late Chief Justice, thought otherwise, and directed the jury to find for the plaintiffs ; and the jury, accordingly, under that direction, found a verdict for the plaintiffs, for $2381,93, being the amount of the stores, with interest, after the expiration of four months.

*W. Slosson*, for the defendants, now moved for a new trial, on the following grounds :

1. That it ought to have been left to the jury, to find whether or not the credit was originally given, or was subsequently agreed to be given, by the plaintiffs, exclusively to *Frederick Jenkins & Son*, it being purely a question of fact, under all the circumstances.

2. That the evidence clearly shews an original *election,* by the plaintiffs, to take *F. Jenkins* & *Son,* the ship's husbands, as their sole debtor ; and that the credit was given exclusively to them.

3. But, if not, that the subsequent acts of the plaintiffs, in transferring to *F. Jenkins* & *Son* the sole charge, taking their note, extending the credit, and giving the receipt, was an entire discharge of *Whitlock* & *Jenkins,* the other part owners.

He said, that, in general, although more than one be interested in the purchase of articles, yet the creditor may elect to take a less number responsible. So, though *all* be originally liable, they may be discharged by accepting the security of *part,* and acquitting the others. He thought one of these points, at least, fully established by the evidence. Before the final close of the transaction, the plaintiffs made thei *election,* to take *F. Jenkins* & *Son,* their sole debtors. True, the first entry was against *both houses ;* but with full knowledge that *Whitlock* & *Jenkins* are equally interested, they afterwards make out and deliver two bills of parcels, charging *Frederick Jenkins* & *Son,* only. From this, the inference is a fair one, that there was an original agreement among all parties, that *they* alone should be liable. And what strengthens the inference is, that the act of rendering the bill is followed up by taking their sole note for the debt at twelve months. A farther confirmation is found in the plaintiffs' letter. Nothing is there even hinted of *Whitlock* & *Jenkins'* joint liability ; but it is treated as a *confidential debt,* due from *F. Jenkins* & *Son* alone. And the pressing manner in which payment is urged, plainly indicates that the plaintiffs had no idea of any other resource for payment. *Schermerhorn* v. *Loines,* (7 *John.* 311) will doubtless be relied on as an authority against us ; but that case is distinguishable from the present, in several respects. The charge there was general against *the owners,* and no account was rendered, charging the ship's husband separately. True, his single note was taken for the debt, and a short extension of credit granted ; but there was evidently no election to make him the sole debtor. There could not have been

any such election ; for, both at the time of the supplies furnished and the note taken, the plaintiff was ignorant,who were interested as owners. Besides, the charge in the bill of parcels being *general*, without naming the owners, shews clearly that they intended to hold whoever should turn out ultimately to be liable as owners. That this is the view which the Court took of that case, is the more evident, from *Reed* v. *White*, (5 *Esp. Rep.* 122,) which is referred to in giving their opinion. Where credit is given to the factor alone, knowing the principal, it is holden an election to take the former as the sole debtor, and works the discharge of the principal. (*Patterson* v. *Gandasiqui*, 15 *East*, 62. *Addison* v. *The same*, 4 *Taunt.* 574. *Seymour* v. *Pychlau*, 1 *Barnw. & Alders.* 18, *per Abbott, J.*) These cases are strikingly analagous to the present. *F. Jenkins & Son* are the *agents of supply* : *Whitlock & Jenkins* are the *principals*, who are discharged by the election.

But suppose here was an original liability on the part of all these partners ; *Whitlock & Jenkins* are discharged, by the subsequent conduct of the plaintiffs. In *Evans* v. *Drummond*, (4 *Esp. Rep.* 89) taking the note of one partner for a partnership debt, was holden to discharge the other. The same thing was decided by this Court, in *Arnold* v. *Camp*, (12 John. 409.) In determining the latter case, the Court refer to *Witherby* v. *Mann*, (11 *John.* 518,) where a promissory note was holden a satisfaction even for a judgment. Against this, *Smith et al.* v. *Rogers*, (17 *John.* 340,) may be cited. A second note was there holden not to be a discharge of the first. But the ground taken by the Court, in that case, is the very ground for which we contend here. They put the discharge on the ground of understanding and intention between the parties. This supports our defence. The plaintiffs say to *F. Jenkins & Son*, " For your accommodation, we extend the credit from four to twelve months." This is saying to *Whitlock & Jenkins*, "we have discharged you. Go on and treat with *F. Jenkins & Son*, accordingly." Its not appearing that *Whitlock & Jenkins* have sustained losses in consequence of this language, can make no difference. They have been lulled in-

to a false security and confidence in their agents ; and losses will be intended. They are the natural consequence of the relation these parties bore to each other. It will even be intended, that *Whitlock & Jenkins* have settled with their agents and partners, giving credit for this very note, as an actual payment. But, whether there be loss or not, can make no difference. The intention is a plain one.

But at all events, whether we are wrong or right in our conclusions, here is matter of evidence, which should have been left to the jury, from which to pronounce upon the question, to whom the original credit was given, or whether it was discharged.

*J. Wells,* contra. The account first rendered, charges the stores against all the defendants. In the *second* and *third,* they are charged to " *Ship Cadmus, acc. Messrs. Frederick Jenkins & Son,*" there being *four persons* joint owners. It would not be a forced construction, to say, that even the latter charge embraces all the defendants, *in terms.* The charge to *Ship Cadmus,* certainly negatives the idea that the plaintiffs looked to *F. Jenkins & Son* alone. The whole four defendants have had the full benefit of these supplies : *Whitlock & Jenkins* have received no injury from any thing which the plaintiffs have done. Yet they have the conscience to resist payment, and ask for *presumption* and *intendment* in their favour.

Here was clearly an antecedent, existing liability. Suppose the note had been given for the debt by a third person ; it would have been no satisfaction, till actual payment. Before this, it is " no more than blank paper," as *Ld. Kenyon* said, in relation to the case supposed. Is giving this note by *F. Jenkins & Son,* doing more, or placing the question on a different footing, than if it had been the note of a stranger ? Had a bill been taken, and dishonoured, it might have been returned and a suit brought immediately ; because there is a condition in such a case, that the bill shall be honoured. *Whitlock & Jenkins* have been led into no error. An account of this transaction was early rendered to them by *F. Jenkins & Son.* If, in the very first

UTICA,
August, 1823.

MULDON
v.
WHITLOCK,

instance, the note had been taken, the receipt given, and an allowance made in account between the owners, the case would have been widely different. There would then have been a loss arising from our own act. But the relative situation of the parties is not altered in the least.

The first ground taken was not made a point at the trial, and cannot be heard here. The Court are asked to send this cause to the jury, although no such request was made at the *sittings*. This is a mere after thought. The 3d and 4th points alone were raised, and the whole is, in truth, a mere question of law. *Wright* v. *Hunter*, (1 *East*, 20,) is in point to establish the defendants' liability ; and in *Scottin* v. *Stanley et al.* (1 *Dall.* 129,) a case similar to this, the owners were holden liable, though they had settled with, and allowed payment in account to ship's husband. And the only difference between *Schermerhorn* v. *Loines* and this case, is, that the plaintiff did not know, at the time of the transaction, that the defendant was the owner. But that case did not turn upon *knowledge ;* nor is there any reason why it should.

A note is not, like a bond, a higher security, merging a simple contract debt. It is given merely to secure and facilitate payment. In no case like the present, therefore, does it operate as a discharge, unless the defendants have been injured by a fraud arising from the means put into the power of the ship's husband by the plaintiff. This is the principle of *Reed* v. *White*, (5 *Esp.* 122.) And it is mentioned, in this point of view, by *Schermerhorn* v. *Loines*, (7 *John.* 311.) *Arnold* v. *Camp*, is also an authority directly against the defendants, though cited on their side. In that case, the plaintiff knew of the defendant's liability from the beginning ; but he enabled the partner to commit a fraud upon the defendant. I have not seen the case cited from 4*th Esp.* but I presume this will be found to turn upon the same principle. The principle is precisely the same as that which pronounces the settlement with an agent, who is thereby enabled to impose upon his principal, conclusive upon the creditor. This rule was laid down, though not acted upon, in *Wyatt* v. *Hertford*, (3 *East*, 147,) and was applied by this Court, in

*Cheever* v. *Smith*, (15 *John.* 276.) The *letter*, whatever the plaintiffs may have supposed, could not alter the truth of the case. It is merely proof that they believed the defendants discharged ; but this does not make it so.

*T. A. Emmett*, (same side.) The cases of *Toby* v. *Barber*, (5 *John. Rep.* 68 ;) *Murray* v. *Governeur*, (2 *John. Cas.* 438 ;) *Herring* v. *Sanger*, (3 *id.* 71 ;) *Johnson* v. *Weed*, (9 *John.* 310 ;) *Putnam* v. *Lewis*, (8 *John.* 389 ;) *Holmes & Drake* v. *D'Camp*, (1 *John.* 34 ;) *Pintard* v. *Tackington*, (10 *id.* 104 ;) *The People* v. *Howell*, (4 *John.* 296 ;) *Whitbeck* v. *Van Ness*, (11 *id.* 409 ;) *Hoare* v. *Clute*, (15 *id.* 224 ;) *Breed* v. *Cook and Caldwell*, (*id.* 241 ;) *Burdick* v. *Green*, (*id.* 247 ;) *Pierce & Pierce* v. *Drake*, (*id.* 475,) (*a*) shew how far a note is to be considered payment. This transaction was in the ordinary course of business with the ship's husband, whose duty the Court will find pointed out in 1 *Livermore on Agency*, 72. He is the organ between the seller and purchaser of stores for the ship, and is, in this respect, employed in an agency or stewardship. This relation and his situation about the ship, causes the dealing to be with him in the first instance. Thus, the owners are to be considered, *originally*, liable ; and it would be strange, that, because the ship's husband *secures* the debt by a note, this liability should therefore be *discharged*. All the ship owners participate in the actual benefits of the purchase ; and the note merely operates as an extension of credit. *Everitt* v. *Collins*, (2 *Campb.* 515.) Indeed, it would have been out of the usual course of business, to have required the note of any one beside the ship's husband. As this note, then, is not a *discharge*, neither is it an *election* to take up satisfied with the note. The very word *election* implies *equity*. Would it stand in a *plea*, either of *payment* or *accord* and *satisfaction ?* Clearly not. Then why does it come under the general issue ? because, as was said by *Ld. Mansfield*, in 2 *Burr.* 1010, " In assumpsit, the defendant may go into an *equitable* defence, under that issue." It is only in the event of their being injured, that they can avail themselves of this defence ; because, till that injury is

(*a*) And vid. *Copper et al.* v. *Power, Anthon's N. P. Rep.* 49.

shewn, they have no equity. This is the rule as marked out by many cases, among which are *Herring* v. *Sanger*, (3 *John. Cas.* 71 ;) *Smith & Marshall* v. *Rogers*, (17 *John.* 340 ;) and *Reed* v. *White*, (7 *John.* 311, 313, 314.) · In the last case this distinction is particularly pointed out. Nor is there any weight in the distinction, that the plaintiffs were ignorant of the defendant's being owner. This is a mistake of the case in point of fact. From the account itself, and other evidence in that case, they evidently did not know that there was an owner, or owners, other than the ship's husband. The reasoning from this distinction, therefore, goes to say, that, if ignorant of the names of the owners, the vendor may afterwards *charge* them, although he has, in fact, *discharged* them. *Schermerhorn* v. *Loines*, is the same, in principle, with the present case ; and *Wyatt* v. *Ld. Hertford*, (3 *East*, 147) was the same, not only in *principle*, but *in fact*. The defendant's liability is placed upon the single ground, that he was not prejudiced.

But suppose it necessary for us to prove, *affirmatively*, that the defendants have sustained no injury. This has been done as far as it is susceptible of proof on our part. The defendants had early notice of the account, from the ship's husband. It is enough that this appears negatively. Injury is a matter, the burthen of proving which lies upon the defendant. In all the cases, like the present, which have been cited against us, had the fact appeared negatively, as here, the plaintiff would have recovered. This would have been the case in *Evans* v. *Drummond*, cited from 4 *Espinasse*, and *Arnold* v. *Camp*, in 12 *John.* will admit of the same remark. In the cases cited from 15 *East*, 4 *Taunton*, and 1 *Barnewell & Alderson*, the original undertaking was by the *agents* themselves—not the *principals*. Writing the letter can make no difference with the debt, or its security. By calling on *one fund*, the plaintiffs do not discharge their claim on the *other*. They might have preferred calling on the agent as the more direct remedy ; or they might have supposed that their further remedy was gone. Their ignorance of the law could not affect their vested rights. It is, at most,

a mere act of incaution. The rights of the parties were fixed long before the letter was written.

*S. Jones*, in reply. Within 2 or 3 days after the sale, an account is made out, and delivered by the plaintiffs, against the ship's husbands only. That it must have been within this, or some very short period, is evident; for, *in a few days after the sale*, in the language of the case, this account is furnished, by *F. Jenkins & Son*, to the other owners, which could not have been done without first obtaining it from the plaintiffs. The question we make is, to whom was the credit given? It appears, by *Schermerhorn v. Loines*, and other cases, that the invariable practice is, where the vendor means to hold the owners, to charge the ship, *by name*, and *owners*. The entry of the charge, in the plaintiffs' books, was a mere copy from the captain's book, who headed it, in the usual form, *Ship Cadmus & owners*. All the plaintiffs' acts, which we know any thing of, which go to fix the *credit*, are against *F. Jenkins & Son*, only. Then, in the very first instance, *in limine*, the defendants are discharged, and the cases cited, to shew that when the credit is given to the agent you cannot go against the principal, apply. A further proof of what we contend for, is, that *F. Jenkins & Son* render an account to their principals, of the whole, as a *disbursement*, in a *single item*—not a detailed account, as if they were to be charged.

But whatever the original credit might have been, in about two months after the sale, the note is taken. This is negotiable, and on an extension of credit for 8 months. Such a step not only gives character to the original transaction, but, if once liable, we are discharged. It is by way of inference, only, that it can be said the note has not been paid. The cases wherein the questions, whether a note operates to discharge a precedent debt, have arisen, all go upon the principle of intention. This is exhibited, most conclusively, by the letter contained in the case. The letter claims to have the debt *considered confidential*. It was not necessary that the plaintiffs should be lawyers to understand their *own intentions*, either in the creation or discharge of the debt.

*Confidential,* as used here, and, in a commercial sense, means that, because the debt was contracted under particular circumstances, it is to be paid *at all events*. It is evident, from this language, that the plaintiff took the note *for better—for worse ;* and they follow it by a *receipt in full.* I do not say that a receipt is conclusive ; but it is always *prima facie* evidence.

It is settled that, though part owners are liable on a general contract, a security for the debt, taken from one of them, with a full knowledge of their liability, will discharge the others. *Schermerhorn* v. *Loines* goes upon ignorance that there was any other owner than *Townsend*, and upon no other ground. The answer would not avail, that there had been a settlement between *Townsend* and *Loines*. Election implies knowledge ; the attempt to shew which, by a publication in the Gazette, was there repelled by the evidence of the plaintiff's clerk. Both the counsel and the court advert to the ground of ignorance. Suppose a settlement had been made between *Townsend* and the other defendants—it would have been no defence ; because there was no knowledge, in the plaintiffs, of the relation between them. It would have been *res inter alios acta*. In *Reed* v. *White*, the note was taken after the ship's husband had received large freights, and the Court, it is true, advert to this point of injury. But the real ground taken, in that case, is the same for which we contend here.

We stand much on the same ground as dormant partners. They are liable only while they continue partners ; though it may be otherwise with those who are publickly known as such. It was on this ground that *Evans* v. *Drummond* proceeded. In that case, *Ld. Kenyon* asks, " Is it to be endured, that, when partners have given their acceptance, and where, perhaps, one of two partners has made provision for the bill, that the holder shall take the sole bill of the other partner, and yet hold both liable ?" It was not pretended that *Drummond* had suffered any injury. The *perhaps*, therefore, *that he might have made provision,* was without foundation. The defendant was always liable ; and it was taking the note, attended with the circumstance of knowledge, which worked

the discharge. *Bedford* v. *Deakin et al.* (2 *Barnw.* & *Al-ders.* 210) presents these very points. *Bayley*, J. says, " In this case, all the three partners originally were liable for this debt; and no arrangement, between themselves, can vary the right of the creditor. That right, however, may be destroyed, by the creditor consenting to accept of the separate security of one partner, in discharge of the joint debt." The Court put the case entirely upon the reservation of the original liability. And *Bayley*, J. says, that the two cases of *Reed* v. *White* and *Evans* v. *Drummond*, cited from *Espinasse*, proceeded upon this foundation, viz. that one partner may be discharged by the note of another. He further says, that the notes " cannot amount to a satisfaction of the joint debt, unless they were, when taken by the plaintiff, intended by him as a satisfaction for it ;" which brings it back to the question of intention. Partners are sureties for each other; and is there any doubt that taking the note of the principal would discharge the surety ? That intention is the test, is also admitted by the case of *Sheehy* v. *Mandaville*, (6 *Cranch*, 253.) The Court there say, " The principle appears to be well settled. The note of one of the parties, or of a third person, may, by agreement, be received in payment." (6 *Cranch*, 264, per *Marshall*, *Ch. J.*) To the same effect is *Arnold* v. *Camp*, and *Toby* v. *Barber*, which has been cited from 5 *John.* There is not one case which goes upon the single ground of injury. The nature of an election is to bind forever, and it can never be changed, unless upon mistake when made. If you give credit to one, you can never extend it to another ; and, where you receive a note as payment, you never can, by any subsequent act, change its operation. It gives the party, as was decided by *Ld. Kenyon*, in *Evans* v. *Drummond*, a right to act as if discharged from the debt. It is true, that, in some cases, where a discharge is not intended, yet the act of the plaintiff shall have that effect ; as if, by a receipt in full, given to the agent, the principal is defrauded. But this is on a distinct ground, steering clear of the question of intention, which is presented by all the cases, including those of *Wright*

UTICA,
August, 1823.

MULDON
v.
WHITLOCK.

v. *Hunter*, cited from 1 *East*, and *Scottin* v. *Stanley*, cited from *Dallas*. *Wyatt* v. *Hertford*, (3 *East*, 147) and *Cheevers* v. *Smith*, in our own reports, are cited, as settling a different rule. These are cases in relation to master and servant. But there the master, alone, is liable ; and the bill, or note, drawn by the servant, is the same as if it had been drawn in the master's own name. The servant is the same as the master. He acts in his place, and the principal will not be discharged, unless an injury has arisen to him. Such cases rest on the law of principal and surety. But, though a debt is not discharged by a note of the surety, yet the converse of the proposition is not true ; for a note of the principal, extending the credit, will always operate to discharge the surety. (*Gould et al.* v. *Robson & Keymer*, 8 *East*, 576.) Now, as to the share of this debt due from *F. Jenkins & Son*, at least, we were mere sureties, and entitled, on that ground, to a discharge for so much.

But we have been injured. *Whitlock & Jenkins* were, in equity, liable for their aliquot share only. It will be seen, by the quotation from *Livermore*, which was made on the other side, that the ship's husband is to buy stores, furnish the ship, pay for them, and look for reimbursement to the owners. Now here the note of the ship's husband is taken, and 8 months time, beyond the usual credit, is given. By this extension of credit, we are not only liable to pay our aliquot part, but we are subject to pay both. It is plain, from the nature of things, as well as from the letter, that the whole debt is thrown upon us by the delay. And besides this, we are, perhaps, left liable to pay the whole of the other disbursements ; or so much, beyond our share, as to have heavy claims over against *F. Jenkins & Son*, in consequence of this very payment and receipt. *Perhaps*, as *Ld. Kenyon* says, in 4 *Espinasse*, we have made payments or adjustments upon this very basis.

At any rate, the cause should have gone to the jury, if there was a single fact for them to pass upon. The Judge should have decided the law, but the facts should always be referred to the jury, with directions to apply the law.

UTICA,
August, 1823.

MULDON
v.
WHITLOCK.

WOODWORTH, J.   The goods were ordered by *Frederick Jenkins & Son*, the ship's husbands, and delivered on the 20*th November*, 1818, at a credit of 4 months.   They were charged, *at the time*, in the plaintiffs' books, to *the ship Cadmus, for account of Frederick Jenkins & Son, and Whitlock & Jenkins.*   Two bills, of the goods in question, were afterwards rendered by the plaintiffs, to *Frederick Jenkins & Son*, headed as follows : " *Novr.* 20, 1818.   *Ship Cadmus, acc.* of Messrs. *Frederick Jenkins & Son*, to *Muldon & Montgomery*, *Dr.*"

The original credit was expressly given to all the defendants, as appears by the original entry in the plaintiffs' books :  they are consequently liable until legally exhonerated.   The bills rendered after the charge thus made, and delivery of the goods, cannot release *Whitlock & Jenkins ;* for it does not purport to be an extract from the books, but a statement of the articles sold.   I do not understand that, thereby, *Frederick Jenkins & Son* are designated, as sole debtors. It is the *ship Cadmus' account ;* or, in other words, a statement of stores for the *ship Cadmus*, as delivered to *Frederick Jenkins & Son.*   The bills were memoranda of the goods, and had no reference to the question—to whom was the credit given ?   This act does not furnish any evidence of an election to discharge a part of the owners ; but, in my view, is perfectly consistent with their liability.

The case of *Schermerhorn* v. *Loines & others*, (7 *John.* 311) decides, that where a person, on the order of the ship's husband, supplied stores to a ship, of which there were several owners, and took the note of one owner in payment, and gave a receipt in full, it was no discharge of the others ; that taking the note, and giving a receipt, was no extinguishment of the original debt, unless the note was paid.   It is true, the Court allude to the circumstance, that the plaintiff did not know that the other defendants were part owners ; but I do not consider the decision as turning on that point. Ignorance of the other owners would, indeed, place the justice of the plaintiffs' claim in a stronger point of view ; but, without that fact, it is well supported by authority. The principle which governs is this, that taking a note for a

pre-existing debt is no payment, unless it be expressly agreed to take it as such, and to run the risk of its being paid. It only postpones the time of payment of the old debt, until a default be made in the payment of the note ; that the inference arising from a receipt is not enough to establish an agreement to take the note as absolute payment. This doctrine is fully supported in *Toby* v. *Barber*, (5 *John.* 68) and the authorities there cited. It is also recognized in *Arnold* v. *Camp*, (12 *John.* 409.) This last case was cited by the defendants' counsel, on the argument, but, in my view, does not support the doctrine contended for. The facts were these : *Camp* and *Downing*, being partners, gave the plaintiff their note, which *Downing* took up, by giving his own note, having received property from *Camp*, his partner, for the purpose of discharging the joint note. Afterwards *Downing* took back his own note, and returned the partnership note. The Court say, " the circumstances fully warrant the conclusion, that the individual note was intended to be given to, and was actually received by the plaintiff, in satisfaction of the partnership note ; that it must necessarily be inferred that it was delivered up for the purpose of being destroyed." This, then, was considered a sufficient proof of an agreement to discharge the partnership demand. Without such agreement, it is an authority to show that the original demand remained in force. It does not appear, by the case under consideration, that the defendants have been prejudiced. The mere extension of the time of credit operated in favour of all the defendants. It was the exercise of a discretion vested, by law, in the plaintiff. He, thereby, incurred no risk. *Frederick Jenkins* & *Son* rendered to *Whitlock* & *Jenkins*, a few days after the stores were furnished, an account of the disbursements of the ship ; which account was never settled between them, nor any payment made by *Whitlock* & *Jenkins*, on account of the stores. There is, then, no evidence of actual loss, sustained in consequence of taking the note of *Frederick Jenkins* & *Son*. If there had been, it would present a different case. In *Reed* v. *White*, (5 *Esp.* 122) the defendants insisted, that the plaintiff had discharged the other owners ; who, in ignorance of

the dealing between the plaintiff and *White*, had suffered him to receive large sums of the *East India Company*, for freight, which they would otherwise have detained. It seems to me this was a material circumstance, on which that case chiefly turned. This Court, in *Schermerhorn* v. *Loines*, so considered it; for they observe, " the case of *Reed* v. *White* proceeds on the ground that the plaintiff had taken the ship's husband, exclusively, for his debtor, knowing there were other owners, *and after a settlement of accounts between them and the ship's husband.*" The principle is also recognized in *Wyatt* v. *The Marquis of Hertford*, (3 *East*, 147.) The plaintiff had taken the draft of the defendant's agent, without the knowledge of the principal, and gave the agent a receipt. *Lord Ellenborough* said, " it did not appear that the defendant was in any way prejudiced, by his steward having given his own security to the plaintiff, and taking the latter's receipt; that, if it had appeared that the defendant had, in the interval, inspected the steward's accounts, and had, in any manner, dealt differently with him, on the supposition that this demand had been satisfied, as the receipt imported, no doubt the defendant would have been discharged."

I do not perceive any ground for submitting this case to a jury. The facts were not controverted. The question is, whether, in judgment of law, the defendants are liable ? My construction is, that they are. Besides; the defendants did not, *at the trial*, request the Court to submit the cause to the jury; but, correctly, put their right on the ground that the law was in their favour. The letter of *Muldon* does not contain an admission that the plaintiffs agreed to discharge the other owners. It states—" for the accommodation of your house, took your note, for eight months interest." I should incline to the opinion, that the accommodation here spoken of, referred rather to the extended time of payment, than to the question of general liability. They speak of its being considered confidential,-and that the loss would be insupportable. I admit that this language goes far to prove that *Muldon* was under an impression that, by taking the note and giving the receipt, his remedy was against *Frederick Jenkins*

& *Son*, solely. Entertaining such an opinion, the letter might well be written in this manner. No doubt he supposed the inference of law would be, that *Whitlock & Jenkins* were exonerated, although he had made no express agreement to that effect. This misapprehension of the law cannot avail the defendant. If the letter does not contain evidence of an agreement to look to *Jenkins & Son*, solely, independent of the note and receipt, it is immaterial. That it does not, I am satisfied. The motion for a new trial must be denied.

SUTHERLAND, J. The original liability of the defendants, as part owners of the vessel, is clearly proved. The articles were charged, in the plaintiffs' books, to *Frederick Jenkins & Son* and *Whitlock & Jenkins*, the defendants. The only question, then, is, whether the plaintiffs, by their subsequent conduct, have discharged the defendants from their original responsibility. Let it be kept in mind, that the proof establishes, incontrovertibly, that the original credit was given to *Frederick Jenkins & Son*, and *to the defendants, jointly.* The *subsequently* taking a separate note, from *Frederick Jenkins & Son*, is not evidence that the original credit was given to them ; but is adduced, as amounting to a discharge from an acknowledged *antecedent* debt. It is evidence, as the defendants contend, of a *subsequent* agreement, on the part of the plaintiffs, to look to *Frederick Jenkins & Son*, alone, for payment. Now no principle of law is better settled, than that taking a note either from *one of several joint debtors*, or from a *third person*, for a *pre-existing debt*, is no payment, unless it *be expressly agreed to be taken as payment, and at the risk of the creditor.* Nor does the taking a note, and giving a receipt for so much cash, in full of the original debt, amount to evidence of such express agreement to take the note in payment. The agreement must be clearly and explicitly proved by the original debtor, or he will still be held liable. (2 *Ld. Raymond*, 928. 1 *Salk.* 124. *Owenson* v. *Morse*, 7 *T. R.* 64. *Tobey* v. *Barber*, 5 *John. Rep.* 68. *Johnson* v. *Weed & another*, 9 *John.* 310. *Sheehy* v. *Mandeville*, 6 *Cranch*, 258. *Opinion*

*of Marshall, Ch. J.* 264.) Giving a prolonged credit upon the note, beyond the usual time, cannot change the liability of the parties, unless the defendants can show that they have sustained an injury in consequence of it.

But rendering the account to *Frederick Jenkins & Son,* and taking their note for the stores furnished the vessel, was not out of the ordinary course of business, even upon the supposition that the plaintiffs still intended to hold the defendants eventually responsible. *Frederick Jenkins & Son* were the ship's husbands. These are defined to be " a class of agents, whose chief employment it is, (among other things) to purchase the ship's stores, for her voyage, and to make disbursements for the ship's use, and to make out an account of these transactions, for their employers, the owners of the ship, to whom they are, as it were, stewards at land, as the officer bearing that name is, on board the ship, when at sea." (*Livermore on Agency,* 72. *Beawe's Lex. Merc.* 47.)

The fact, that they were also part owners, does not alter the case. They were the persons to whom it was natural and proper for the plaintiffs to present their account, and, in the first instance, to look for payment. They were the agents for all the owners, and in that character the plaintiffs dealt with them. They gave their note as the agents of the defendant. It was *their* note, in judgment of law ; and, not having been paid, the plaintiffs have a right to resort to their original cause of action. (*Everett* v. *Collins,* 2 *Campb.* 515.)

This case is, in no respect, distinguishable from that of *Schermerhorn* v. *Loines,* (7 *John. Rep.* 311) except that, in that case, although the plaintiff knew there were other owners besides *Townsend,* there was no positive evidence that he knew who they were. The evidence there certainly warranted the presumption that he did know who they were. But that fact is only mentioned incidentally, in the opinion of the Court, and is, by no means, the point on which the decision turned. The Court, evidently, put their opinion upon the broad ground, " that the defendants were liable as owners, and that taking the note of *Townsend,* the *ship's husband and part owner,* was no extinguishment of the ori-

ginal debt, until the note was paid." They distinguish the case from that of *Reed* v. *White*, by remarking that, " in that case, the plaintiff had taken the ship's husband, *exclusively*, for his debtor, knowing there were other owners, and *after a settlement of accounts between them and the ship's husband.*" Now it does not appear, in *Reed* v. *White*, that the plaintiff knew who the other owners were, but they were held not to be liable on the ground that, having been kept in ignorance of the transaction between the plaintiff and the ship's husband, *they had suffered him to receive large sums of money, which they otherwise would not have done.* (*Reed* v. *White*, 5 *Esp. N. P. Rep.* 122.) The true principle, applicable to this class of cases, seems to be this : *If a man deal with the agent of another, in such a manner as to enable him to settle with his principal, and receive from him a sum of money, or other advantage, which otherwise he would not have been able to obtain, and the principal does, in truth, so settle with his agent, he shall not, afterwards, be responsible upon the contract of his agent, if he fail to pay.* (*Wyatt* v. *The Marquis of Hertford*, 3 *East's Rep.* 147. *Cheever* v. *Smith & others*, 15 *John. Rep.* 276.) In this case, the defendants have not been misled, or injured, in consequence of the manner in which the plaintiffs dealt with *Frederick Jenkins & Son.* They have not settled with them upon a different principle, or paid them any money, which they would not otherwise have done. Upon every principle, therefore, they must be held responsible, upon this contract.

Much stress was laid, in the argument, upon the letter from the plaintiffs to *Frederick Jenkins & Son*, of the 25*th June*, 1819, urging the payment of the note, in very pressing terms, although *Frederick Jenkins & Son* had then failed. The inference drawn from it was, that the plaintiffs must then have thought their only remedy was upon the note. This is, by no means, a necessary consequence. Having dealt with *Frederick Jenkins & Son*, alone, throughout the transaction, they may have thought it their moral, if not their legal duty, to make every exertion in their power to obtain payment from *them.* They were also ignorant of the state of the accounts between *Frederick Jenkins & Son*

and the defendants. They did not know but the defendants had paid them the amount of this account, upon the strength of their receipt to *Frederick Jenkins & Son*. Thus, they had many inducements for wishing to obtain payment from them, independent of the belief that the other defendants were absolutely discharged ; and their unavailing efforts, for that purpose, can afford no protection to the defendants, against this demand. I am, accordingly, of opinion, that the plaintiffs are entitled to judgment.

SAVAGE, Ch. J. concurred.

Rule for judgment absolute.