## Borland *v.* Zittlosen and others.[1]

(*District Court, S. D. New York.* March 30, 1886.)

1. SHIPS AND SHIPPING—SUPPLIES—PAYMENT—PART OWNER'S NOTE—DISCHARGE OF OTHER OWNERS.

    Supplies were furnished to a vessel by one B., who received on account of it the four-months note of Z., the ship's husband and a part owner. Z. subsequently became insolvent. The note was protested, and this action was brought by B. against all the owners for the value of the supplies. It appeared that B., in so taking the note, did the best he could to obtain payment. *Held*, that such taking of Z.'s note by B. was not a discharge of the other part owners.

2. SAME—EQUITABLE ESTOPPEL—EVIDENCE—ADMISSIONS, UNSATISFACTORY NATURE OF.

    The master of the vessel, previous to remitting several sums of money to Z., had caused inquiries to be made of B. as to whether his bill for supplies had been paid. After B.'s death several witnesses testified that B. had admitted that it had been paid or settled by Z., and the captain made several remittances to Z., as managing owner. Z. was, however, a creditor of the ship and of the other owners on joint account, to a much larger amount than the amount of the remittances thus sent him. It was contended that this admis-

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

sion by B. created an equitable estoppel, which discharged the respondents. *Held,* on the evidence, (1) that the alleged statements of B. were improbable, and not satisfactorily proved; and, (2) if made, were not shown to have been made with any intent to induce payment to Z. by the master, or with any knowledge that they were likely to do so; and (3) that it was not shown that respondents were pecuniarily prejudiced by the misrepresentations so that it would be unjust to allow libelant's claim. *Held,* therefore, that an estoppel had not been made out, and that libelant should recover.

3. SAME — NOMINAL OWNER—PERSONAL LIABILITY FOR SUPPLIES—MASTER OR MANAGING OWNER'S AUTHORITY TO BIND.

" The law is well settled in this country that a mere registered owner, holding a nominal title only for the benefit of another, and taking no part or interest in the vessel's business, is not personally liable for supplies furnished. In such cases, though the vessel may be bound *in rem,* the master or managing owner has no authority to bind the merely nominal owner personally. "

In Admiralty.

*Wilcox, Adams & Macklin,* for libelant.

*Goodrich, Deady & Platt,* for respondents.

BROWN, J.    This libel was filed to recover a bill of $1,441.77 for supplies furnished by the libelant to the ship Zephyr in June, 1883. The proof shows that the registered owners were the defendants Zittlosen, Springler, and Booth; but that Booth was a mere nominal owner, holding his interest for the benefit of the defendant Kruger, a prior registered owner, in whose interest the voyages continued to be made as before; that Zittlosen was ship's husband and general agent of the vessel in New York; and that Booth took no part and had no beneficial interest in her navigation.    The amount of the supplies was admitted.

The law is well settled in this country that a mere registered owner, holding a nominal title only for the benefit of another, and taking no part or interest in the vessel's business, is not personally liable for supplies furnished.    In such cases, though the vessel may be bound *in rem,* the master or ship's agent has no authority to bind the merely nominal owner personally.    *Macy* v. *Wheeler,* 30 N. Y. 231, 241; *Stedman* v. *Feidler,* 20 N. Y. 437; *Scull* v. *Raymond,* 18 Fed. Rep. 547, 549, 550, and cases there cited.    If, in any such case, an equitable estoppel might arise against a registered owner through the effect of the registry and the representations of the captain or agent, the estoppel could not arise where the material-man was put upon his guard, or had reason to suppose that the registered owner was a merely nominal owner for the benefit of another.    In this case I think the evidence is sufficient to show that the libelant knew that Booth, though one of the registered owners, had no interest in the vessel.    In *Brodie* v. *Howard,* 17 C. B. 109, 121, and *Frayer* v. *Cuthbertson,* 6 Q. B. Div. 93, knowledge that a part owner dissented was held immaterial.    It was held a sufficient defense that the other owners and the master had no authority to bind him.    Upon either ground the defendant Booth must be held not liable in this case.

In September, 1883, the libelant took the note of Zittlosen, the ship's husband, at four months, for the amount of the bill.    Before

it matured Zittlosen became insolvent, and the note was protested, and has never been paid. The libelant died, and the case was continued by his administratrix. It is contended that the other defendants are discharged, on the ground of equitable estoppel, because the master, before remitting to Zittlosen, the ship's husband, several sums of money in August, 1883, amounting altogether to about $7,500, caused inquiries to be made of Borland, through Kruger, whether his bill for supplies had been paid; and that Borland, in answer to these inquiries, stated that it had been paid or settled by Zittlosen; and that in consequence of this statement the remittances were sent by the master to Zittlosen; and that but for such assurances the master would have paid the libelant's bill through some other channel, as some question already existed as to Zittlosen's credit. If a material-man voluntarily takes a note or bill from the ship's husband, or one of the part owners, knowing that he might have the money from the other owners jointly liable, and the situation of the latter is afterwards altered for the worse through their dealings with the agent, no doubt the owners are discharged. Macl. Shipp. (3d Ed.) 113, 186; *Strong* v. *Hart,* 6 Barn. & C. 160. But in this case the evidence does not suggest any intimation to Borland that he might have procured the money from any other person than Zittlosen. He was the only authorized channel of payment. So far as appears, Borland, in taking Zittlosen's note, did the best he could to obtain payment. The master was away; Booth, I think, was known not to be really interested in the matter; and Kruger was known not to be the person from whom payment was expected, or in any condition to pay. Taking the note of Zittlosen was, therefore, not in itself any discharge of the other defendants. *In re The Salem's Cargo,* 1 Spr. 392; *Bottomley* v. *Nuttall,* 5 C. B. (N. S.) 122; *Muldon* v. *Whitlock,* 1 Cow. 290; *Davison* v. *Donaldson,* 9 Q. B. Div. 623.

The estoppel relied on is based upon the alleged statements or admissions of Borland, which three witnesses testified were made by him to Kruger in July, 1883, to the effect that he had been paid, or had been settled with, by Zittlosen. If the proofs satisfied me that statements of this kind had been deliberately made by Borland, and made either with the design to influence the remittance of funds to Zittlosen, or under circumstances that Borland might reasonably have supposed would influence the conduct of the other owners, and that the other owners, relying upon these statements, had afterwards remitted funds to Zittlosen to their prejudice, no doubt a legal estoppel would be made out against any subsequent claim upon the other owners; for the remittance and the consequent injury would in that case have been chargeable to the wrongful misrepresentation of the creditor. *Thomson* v. *Davenport,* 9 Barn. & C. 78; *Robinson* v. *Read,* Id. 449; *Irvine* v. *Watson,* 5 Q. B. Div. 414; *Davison* v. *Donaldson,* 9 Q. B. Div. 623; *Heald* v. *Kenworthy,* 10 Exch. 739, 746; *Berwind* v. *Schultz,* 25 Fed. Rep. 912, 920; *The Irthington, post,* 143.

Conceding that something of the purport alleged was communicated by Kruger to the captain, although that fact was not strictly or properly proved, and conceding that about $7,500 was afterwards remitted by the captain to Zittlosen, in order to constitute an equitable estoppel, or an estoppel *in pais*, the proofs must show: (1) Reasonable certainty as to the misrepresentations alleged; (2) an intent that the statements should be acted on, or knowledge that the representation was one likely to be acted upon, or that it was of a nature and under circumstances calculated to mislead the other party to his prejudice; (3) and that the other party was thereby induced to act upon it, and did act upon it, to his prejudice. Bigelow, Estop. (3d Ed.) 484, 490, 541, 549. I am not satisfied that the facts and circumstances proved are sufficient to constitute such an estoppel in this case, for the following reasons:

1. Certainty as to the facts is the first requisite of such an estoppel. Bigelow, Estop. 490; *The Belle of the Sea*, 20 Wall. 421, 430. Testimony as to naked admissions given by witnesses who, though not parties to the record, are in close sympathy and interest with the party calling them, is one of the most untrustworthy kinds of evidence. 1 Greenl. Ev. § 200. In *Lench* v. *Lench*, 10 Ves. 518, Sir WILLIAM GRANT says: "This is, in all cases, most unsatisfactory evidence, on account of the facility with which it may be fabricated, and the impossibility of contradicting it. Besides, the slightest mistake or failure of recollection may totally alter the effect of the declaration." This was approved by the chancellor in *Botsford* v. *Burr*, 2 Johns. Ch. 412, and by STORY, J., in *Smith* v. *Burnham*, 3 Sum. 438. Under our present practice, which allows parties to be witnesses, where such testimony is given after the death of the person alleged to have made the statements, so that only one side can be heard, it is liable to peculiar suspicion. Usually the witnesses cannot give the precise language, nor the whole of it. A little difference of expression, or a slight qualification omitted, forgotten, or suppressed, might neutralize all its legal effect. In the cases above referred to, the absence of corroborative circumstances, with some countervailing proofs, were held sufficient ground for disregarding it, leading to the conclusion, as STORY, J., observes, that "there may have been some mistakes and misapprehensions, to say the least, on the part of the witnesses as to the purport and effect of the conversation to which they testified." When there are no corroborative circumstances, and the proofs show beyond controversy the incorrectness of the statements alleged, and that there was no motive to mistake the fact, it is more rational to suppose misunderstanding or mistake or inaccuracy in the testimony, than to suppose statements made which the circumstances show to be in the highest degree improbable, if not incredible.

Such is precisely the situation of the libelant's claim here. At the time the statements are alleged to have been made by Borland, that is, in July, 1883, it is perfectly certain that not a dollar had been

paid upon his claim, and that no settlement had been made in reference to it; although it is probable from other testimony that some efforts had been made to obtain it. The note was not taken until in September. No motive is suggested that Borland could have had to state untruly that his claim was either paid or settled. Had it been intimated to him that the captain would send him the money for his bill, there is no possible doubt that he would have accepted the proposition at once. No such intimation was given him.

2. Whatever the conversation may have been, it is not stated that there was any suggestion to Borland that the inquiry was made in the master's behalf, or intended to be communicated to the master, or made with reference to securing the payment of the libelant's bill; or that any remittances of money to Zittlosen were intended. Kruger, to whom the statements are said to have been made, was at the time largely indebted to the ship, and no payment or settlement was expected by Borland through him. So far as related, the conversation, even as testified to, would seem merely casual. Estoppels of this character are based upon the obligations of good faith. This obligation is mutual, and requires that no estoppel be drawn from conversations merely, unless the person answering inquiries knows, or has reason from the circumstances to believe, that the action of others is likely to be influenced by his answers. *Pierce* v. *Andrews*, 6 Cush. 4; Bigelow, Estop. 484, 529, 541. There was nothing to indicate anything of this kind to Borland. Whatever the conversations referred to may have been, I am not satisfied that the testimony as to Borland's remarks fairly represents all that occurred. The remarks may have been misunderstood, or imperfectly reported, or not seriously meant. He could not have supposed or suspected that they would influence any one's conduct. They may have been mere *facetiæ* or *persiflage*, or made after the note had been taken in September,—too late to operate as an estoppel.

3. To constitute an estoppel it must further appear that the defendants have been legally prejudiced; that is, so substantially injured that it would be *unjust* to allow the libelant's demand. The evidence fails to show this. The proof shows that both the other owners were indebted to the ship, and to Zittlosen, as ship's husband, far beyond all the moneys remitted by the captain, after the alleged statements of Borland. If the captain had paid Borland's bill, so much less would have been remitted to Zittlosen, and the liability of the master and of Kruger to him have been so much more. It is not claimed, and there is no reason to suppose, that the master would not have sent to Zittlosen the remaining $6,000. As a creditor of the ship he was entitled to that money. It was a matter of indifference to these defendants whether their indebtedness was to Zittlosen alone, or to Borland and Zittlosen. They have lost nothing by paying the whole $7,500 to Zittlosen, instead of paying some $1,500 of it to Borland. The fact that so large an amount of money, in excess of Bor-

land's bill, was sent to Zittlosen, renders it improbable that the conduct of the defendants in sending the money to Zittlosen was at all induced by Borland's statements; or that the master's inquiry by letter to Kruger was anything more than a mere voluntary friendly act for Borland's security. Even this possible view is somewhat doubtful, from the fact that the alleged intention to pay Borland directly, rather than through Zittlosen, if he was not already paid, was in no way communicated to Borland at the time, as it naturally would have been if really intended; and that alleged intent even now rests solely upon these long subsequent statements of mere secret, uncommunicated intentions at that time. Upon my strong doubts of the correctness of the testimony as to the statements alleged to have been made by Borland, the absence of any corroborative circumstances, and of any offer to pay him at the time, and upon the evidence showing that there has been no substantial legal prejudice as respects the liabilities of the defendants, on the whole, I must hold the estoppel not made out. Macl. Shipp. 114, 186; *The Active*, Olc. 286; *Robinson* v. *Read*, 9 Barn. & C. 449; *Muldon* v. *Whitlock*, 1 Cow. 290; *Berwind* v. *Schultz*, 25 Fed. Rep. 912, 920; *Keay* v. *Fenwick*, 1 C. P. Div. 745, 754.

The libelant is entitled to a decree against all the defendants, with costs, except as against Booth, against whom the libel is dismissed, with costs.