Stedman *v.* Feidler.

Juagment affirmed.

---

STEDMAN *et al. v.* FEIDLER, Administrator, &c.

The part owner and manager of a vessel has no authority to bind the estate of a deceased part owner for supplies.

The administrator of the deceased owner, if taking part in the running of the vessel, though he may render himself personally responsible for supplies furnished to her, cannot bind the estate of his intestate.

*It seems*, that a part owner, who has expressly dissented from the employment of the vessel, but has taken no proceeding in admiralty to protect himself, is not responsible for supplies furnished while the vessel is run by the other owners, although the party furnishing them had no knowledge of such dissent. Per ALLEN, SELDEN and GROVER, Js.

APPEAL from the Supreme Court. Action to recover for supplies furnished by the plaintiffs, at Cleveland, in the State of Ohio, to the steamboat De Witt Clinton, on the order of defendant Wing, part owner and master. The facts, as found by the referee who heard the cause, were substantially as fol-

lows: Eli Hart died intestate, December 31, 1845, the owner of one-seventh of the boat. The defendant Wing, at the time the supplies were furnished for which the action was brought, was the owner of the other six-sevenths. The defendant Feidler, on the 3d day of February, 1846, was appointed adminis- trator of Hart, and has since continued to act as such.

About the 9th of December, 1846, Feidler inquired in re- spect to the boat, and directed that efforts should be made by his agent at Buffalo, to sell the interest held by him as admin- istrator. During the season of navigation of 1846, the boat was run without the direction, control or interference of the defendant Feidler; and about the 2d of February, 1847, he received $1,000, as a portion of her earnings in the season of 1846. On the 12th of October, 1849, he received $147.44, and on the 26th December, 1849, he received $36.29, which sums were paid him as part of the earnings of the boat in the season of navigation, in 1847. The boat was run by Wing, as part owner, during the years 1847, 1848, 1849, 1850 and 1851, he, said Wing, acting as master or clerk, and running her in such capacity.

In the year 1851, from the 6th of April to the 14th of No- vember, both inclusive, the plaintiffs sold and delivered meats and provisions to the boat, upon the order and directions of her steward, and cook, to the value in all of........ $347 89
and received on account therefor................  245 00

Leaving due on the latter day,................ $102 89

Several of the payments were made by Wing, who knew the plaintiffs were furnishing the provisions, and gave general directions to the cook and steward to procure the same for the boat, and in November, 1851, after they were procured, pro- mised to pay for them at a future day. The provisions were proper and necessary supplies for the boat, and the master knew that the plaintiffs were furnishing them.

In October, 1852, the attorney for the plaintiffs called on Feidler to pay the bill, and was told by F. that he held or

owned one-seventh of the boat; that he had paid $2,000 for her, and should not pay any more till the claims were legally proved. After this suit had been commenced, and after the boat had been sold, and about 1853, Feidler directed his attorney at Buffalo to commence a suit for the earnings of the boat. He had before paid accounts against the boat, and taken an assignment thereof by the advice of his attorneys. In the spring of 1849, Feidler's attorney, at Buffalo, by his direction, told the defendant Wing, that F. had directed him to say to Wing, that he, Feidler, would have nothing to do with the running of the boat, or in paying any expense or indebtedness on her account, and would have nothing to do with her business or concerns, or with the boat itself, except to sell his interest in her if he could. The plaintiffs lived in Cleveland, in 1850 and 1851, and for several years previous thereto, and during that time had done business there, and been in the habit of furnishing steamboats and vessels. The defendant Wing, during that time, resided at Monroe or Toledo, and was well known at Cleveland and other ports on Lake Erie. He was on the boat as master or clerk, from 1849 to 1852, and she was accustomed to stop at Cleveland, during those years, every trip from Buffalo to Toledo. It was then understood that W. had the entire management of her, and was part owner. The defendant Feidler, considering that as administrator he had no authority to direct the running of the boat, nor to participate in such direction, and that his duty was to sell and dispose of Hart's interest, as soon as a sale could be properly effected, uniformly directed his efforts to effect such sale, and directed his attorneys and agents to conclude it by auction if it could not otherwise be done. He never consented to, or took directly or indirectly any part or lot in the running of the boat, or in the incurring of any bills or expenses in relation to her, and whatever was to be done as to her use or management, or the creation of any bills, was done without his knowledge, information or consent, except as already stated.

From these facts, the referee found and decided, as a conclusion of law, that the defendant Wing, and the master, steward,

and clerk of the boat, had not, nor had either of them, any authority or direction from the defendant Feidler, either express or implied, to contract for or procure such meats and provisions, or to bind the defendant Feidler as such administrator therefor; and he ordered judgment in favor of Feidler, which was entered, with costs. This judgment was affirmed on appeal, at general term in the eighth district; and the plaintiffs appealed to this court.

*A. P. Laning*, for the appellants.

*Sherman S. Rogers*, for the respondent.

ALLEN, J. There is no doubt, that as a general rule, in case of ships or boats, one part owner may bind the other for necessary supplies furnished on credit, and so also the master may bind the owners.

"In case of part owners of ships," says Story in his treatise on Agency, section 40, "There is some peculiarity in the law, growing out of the necessary adaptations of it to the exigencies and conveniences of commerce. Part owners of ships are tenants in common, holding distinct but undivided interests, and each is deemed the agent of the others, as to the ordinary repairs, employments and business of the ship, *in the absence of any known dissent*. But if any part owner dissents, the others cannot bind his interest, by their acts as agents, at least where the other party *has notice of the dissent*.

"A majority of the owners in interest have a right to employ the ship and they may appoint a master nothwithstanding a *dissent* from the minority, and the master so appointed, will *virtute officii* become entitled to bind all the owners by his acts in the ordinary business of the ship, unless the party dealing with him has notice of such dissent, or the dissenting owners have, by proper proceedings, placed themselves in a position not to be deemed owners for the voyage undertaken by the majority."

The authorities upon which these observations are based, both in England and this country, are not always uniform or in har-

mony. We will first look at a few in our own State. In *Schermerhorn* v. *Loines et al.* (7 *J. R.*, 311), a person supplied stores to a ship of which there were several owners, on the order of one of them who acted as ship's husband, and took his note in payment and gave a receipt in full. This was held to be no discharge of the other owners, especially as it did not appear that the plaintiff knew at the time that there were other owners. It was said that the supplies were deemed in law to be furnished on the credit of each and all the owners, and also of the master where he makes purchases, unless the contrary is shown. The same principle is affirmed in *Flanders* v. *Merritt* (3 *Barb.*, 202), in *Marquand* v. *Webb* (16 *J. R.*, 92); in 1 *Cow.*, 307; *King* v. *Lowry* (20 *Barb.*, 538, affirmed in this court); and in *Provost* v. *Patchin* (5 *Seld.*, 240). In the last case this court said that the captain of a vessel has full power to bind his owners for necessary repairs and victualling. The presumption is, that it was done for the benefit and at the request of the owners.

On the other hand, in the case of *Hallet* v. *The Columbia Insurance Company* (8 *J. R.*, 272), a vessel was let to the master, who engaged to victual and man her at his own expense; held that he was owner *pro hac vice*, and that the owners would not be liable for his acts. Without further adverting to the cases in this State, it will be seen that the majority of them, including that of *Provost* v. *Patchin*, decided by this court, recognize and affirm the rule laid down in *Story* (§§ 40, 116, 294, 296, 297, 298); *Abbott on Shipping* (105, *sub.* 4, and also 106); and *Flanders on Shipping* (§§ 366, 368). This, it is said, is the general doctrine, and the master may be personally responsible as well as the owners; and it prevails, except where there is satisfactory proof that exclusive credit is given either to the owner or to the master. "For it is perfectly competent," say the writers, "for the parties so to contract as to confine the responsibility either to the master or to the owners. If, therefore, there is satisfactory proof that exclusive credit has been given to the one the other will be completely discharged." What will amount to satisfactory proof of an exclusive credit, say the

books, must depend upon the circumstances of each particular case. The mere fact that the supplies have been furnished at a foreign port, at the request of the master, will not serve to discharge the owner; though the master himself will in such case be liable at the option of the vendor. If some positive act or contract can be shown, demonstrating an intention to discharge the owner and to extend the credit exclusively to the master, the former will in such case be discharged. A mere charge however of the supplies, in the books of the material-man, against the master personally, "will not be sufficient to discharge the owner, because such a charge is quite consistent with the intention still to hold the owner liable, whether he be at the time known or unknown." "And it will make no difference in respect to the liability of the owner, that by a private agreement between the owner and the master, the latter is to have the entire ship to his own use for a specified period, and is to provide for the ship—for such a private agreement cannot vary the rights of third persons." (*Story*, §§ 297, 298.) The same remarks apply with equal force where a notice has been given to the master by the owner (or co-owner with himself) that the latter will not be answerable for supplies furnished the ship. The rights of third persons cannot be affected unless the notice is brought home to them. The authorities on this subject make some difference between the case of credit at a home port, where the owner resides, and a foreign one; but it is not necessary to advert to the distinction here, as the rules referred to applies with all their force, the present being a case where the supplies were furnished at a foreign port.

The referee does not find, as a fact, that the credit was given to the master or owners, or to both. All his finding on that subject is, that from the 6th of April to the 14th of November, 1851, the plaintiffs sold and delivered the provisions to the steamboat, upon the orders and directions of the steward and cook; that several payments on account thereof were made by the defendant Wing, who knew that the plaintiffs were furnishing the provisions, and gave general directions to the cook and steward to procure them, and that he (Wing) promised

after they were procured to pay for the same at a future day. But the finding is silent, except as to inference from the above language, as to whom the credit was given. The conclusion of the referee on this finding, as matter of law was, that the defendant Wing, and the master, steward and clerk of the boat had not, nor had either of them, any authority or direction from the defendant Feidler, either express or implied, to contract for or procure the provisions or to bind the defendant Fiedler, as administrator therefor.

It is proper here, in connection with this conclusion, to examine some cases having a bearing upon the point, and upon which he probably based his decision, as the Supreme Court did theirs, in affirming the judgment.

These cases mostly occurred in the English courts—a few of them arose in sister states in this country. In several of the former, it was remarked by the court that to the general rule authorizing the master or co-owner to bind the owners of the ship or vessel for necessary supplies, there are some exceptions, and that one important one is, that where the party in possession of the ship, whether part owner, mortgagee, or charterer, has the exclusive control and management of, and runs her at his own risk and expense, and for his own benefi., he is regarded as the owner while such interest continues, and the other owners are not liable for the expenses of supplying, whether the party selling has notice of the relations between the parties or not. (*Reeve* v. *Davis*, 1 *Adol. & Ellis*, 312; *Jennings* v. *Griffith*, *Ryan & Moody*, 42; *Briggs* v. *Wilkinson*, 7 *Barn. & Cress.*, 30; *Cutler* v. *Thurlos*, 20 *Maine R.*, 213.) The part owner may bind, as a general rule, his co-owner upon the presumption of law, of authority in each to bind the other as his agent. But this presumption is not conclusive, as if the one dissent and forbid the other from furnishing supplies on his account. But this dissent must be open and expressed. The referee finds an express dissent in this case, but does not inform us whether that dissent was communicated to the plaintiffs or not. The case shows, outside of the finding, and to which I suppose we cannot refer, that the plaintiffs had no

notice of this dissent when the supplies were furnished. At all events, there is no finding that they had such notice. But does this alter the case so as materially to affect the rights of the parties? The two principal cases relied upon by the counsel for the defendant as authorities that notice is alto-gether immaterial, so long as the dissent absolutely existed, are *Mitcheson* v. *Oliver*, (32 *Eng. L. and Eq.*, 219), and *Brodie* v. *Howard* (17 *C. B.* [84] *C. L.* 109). The decision in the latter case was suspended in order to await the judgment of the former, and as both depended upon the same, or nearly the same questions, it will only be necessary at the present time to look at the latter. The action was brought to recover against the defendant, as part owner of the ship Stratheden, for work done by the plaintiff, as a ship builder, on the vessel between August and December, 1852, after her arrival from a voyage, in London, which repairs had been ordered by a Mr. Lewis, who was co-owner with defendant, and had been superintended by the master. The order for them was given by Lewis. Before the repairs, and shortly after the arrival of the vessel, in June, 1852, the defendant wrote to Lewis and informed him that it was not his intention to sail her again, and proposed to Lewis to sell him his share. Lewis agreed to purchase, but the contract was not carried into effect. Finding that Lewis was getting the ship ready for another voyage, and incurring expenses for repairs, the defendant gave the plaintiffs notice, on the 1st of September, 1852, that he would not be responsible for them. The repairs had been commenced on the 29th of August previous. On the 20th of September following, the defendant caused the ship to be arrested by process out of admiralty, and obtained security for the value of his interest, deducting the repairs. The plaintiffs' counsel insisted that the defendant was, as one of the regis-tered owners, liable for all the repairs, or, "*at all events, for those incurred before the receipt of the notice.*" But the court deemed the notice as altogether immaterial, and placed its decision upon the ground that the mere fact of the defendant's dissent, or notice to Lewis that he did not intend to run

the vessel any more, was a full revocation of Lewis' authority to bind defendant as his co-owner, and that he was not liable for repairs afterwards ordered by Lewis, whether the party making them was informed of the notice or not; and they absolved him from all liability, as well for the work done before as after the notice. That the power of one part owner of a ship to bind another, or of the master to bind the owners, depended upon the question of authority, which in that case (as in the present) was revoked by the co-owner. That where a dissent is given, or a surrender has been made of the entire control of the vessel to the co-owner, who runs her at his own risk and expense, the party dissenting or surrendering is absolved from all liability, and is not entitled to any of the profits of the voyage, or the earnings of the ship. (*See Horn* v. *Gilpin, Amb.*, 255.)

In this case, although the defendant was advised to and did commence an action for a share of the earnings of the boat, yet it is clear, from the authorities last referred to, that he was not entitled after his dissent to any share, and for that reason was absolved from all liability for the supplies furnished.

It is agreed against the force of these cases, that in each of them there was a prior contract of sale, and a beneficial and equitable interest parted with. But it is evident from the language used by the court, that little importance was attached to the contract of sale, except as bearing upon the evidence of authority.

In *Brodie* v. *Howard*, the contract of sale was wholly disregarded, and the decision put upon the ground already stated. So in regard to the notice of dissent, which in this case it is strongly insisted was not brought home to the plaintiffs. In the case just referred to, it was held to be altogether immaterial, though notice there was given after the repairs had been commenced. It was nevertheless held, that the plaintiff could not recover for those incurred before its service.

It is argued that the liability of the defendant could only be avoided by a proceeding in admiralty to arrest the vessel. But it is believed, that this is not important so far as the plaintiffs'

rights are concerned. In such a proceeding, the owners are the sole parties, and the security sought for and obtained, is against the loss of the interest of the co-owner in the vessel. No more notice is given to third persons by such a proceeding than by the dissent, except by the proceedings, which are of very little moment to strangers in a foreign port. Knowledge by any such, who furnish supplies, has never been deemed material. Yet it is conceded that the proceedings would absolve the co-owner who institutes them. If *Brodie* v. *Howard* controls the present case, proceedings in admiralty were unimportant.

It will then be seen, that if the last cases, which we have been briefly reviewing, are considered binding authorities, notice to the plaintiffs of dissent was altogether immaterial, and that the law of this case is clearly with the defendant; and unless the case of *Provost* v. *Patchin*, heretofore adverted to, is not in harmony with them, that the judgment below must be affirmed.

But there is another ground on which the affirmance in this case may be placed. The defendant Feidler, was acting in all his relations with the other defendant, in his capacity of administrator alone of Hart. He had no right to incur new responsibilities or liabilities after the death of his intestate. His duties were confined to selling and disposing of the share to which the estate was entitled, and to nothing more. He could not continue the business at the risk and expense of the estate. The share of the intestate passed at his death to his personal representatives, and he as administrator was required to settle the business of the estate as soon as possible. The authority was revoked by the death of Hart, in the co-owner, to bind his estate for supplies. If they had been co-partners instead of co-owners, Wing, on the death of Hart, would have run the boat afterwards, at his own risk, and the estate would not have been liable for supplies furnished. (*Story on Part.*, § 347.) The administrator could not have bound the estate in that case by taking part in running her—he would have been personally liable. (1 *M. & S.*, 412; *Alsop* v. *Mather*, 8 *Conn.*, 584; *Coll. on Part.*, § 604.) A different rule ought not to be applicable to the

case of part owners.    The estate might otherwise be ruined by the carelessness or misconduct of an administrator, in permitting a vessel to run after the death of his intestate.    The judgment should be affirmed.,

SELDEN and GROVER, Js., were understood to concur on both the grounds discussed in the preceding opinion, the other judges on that last stated: the court not passing on the question first discussed.

Judgment affirmed.