STEUBEN   COUNTY.—HON.   GEORGE   T.   SPENCER,   SURROGATE.—
FEBRUARY, 1872.

## LARROUR v. LARROUR.

*In the matter of the accounting of* ALBERTUS LARROUR,
*one of the executors of the Last Will and Testament
of* FRANKLIN LARROUR, *deceased.*

An executor or administrator cannot be allowed for expenditures incurr-
ed after the decedent's death in stocking or carrying on a farm left by
the decedent, or in operating a mill owned by himself and the dece-
dent as tenants in common, in the absence of clear evidence that
the expenditures were beneficial to the estate.

In such a case, expenditures not necessary in the proper administration of
the estate, or, in execution of specific powers in the will, should be
disallowed : and, on the other hand, credits of moneys not proceeding
legitimately from the assets or estate, should be stricken out.

But charges for threshing grain if done to prepare for sale, or market,
grain raised by the decedent, are proper ; so of taxes assessed against
him in his life time. *

Where the widow was a co-executrix, and had assented to improper
expenditures, but was also guardian for minor heirs and next of kin,
and had not expressly assented in that capacity,—*held* that though
she could not, as executrix, object to their allowance to her co-exec-
utor, she could do so as guardian.†

In such case, the Surrogate should appoint a special guardian for the
purposes of the accounting.

Where such expenditures exhausted the personalty before the debts
were fully paid, and necessitated a sale of reality to pay debts,—*held,*
that they could not be treated as payments made to the guardian.

On taking an account before an auditor, contestants are to be required to
point out with reasonable certainty the grounds of objection to the
claims of the executor or administrator ; but they are not restricted to
the objections first taken.

Where minors are interested, objections taken on their behalf even on the
final argument after the evidence is closed, should not be excluded
as waived.

---

* Otherwise where fee or even remainder after termination of a life
estate is bequeathed to executor in trust.  (*Peck* v. *Sherwood,* 56 *N. Y.,* 615.)

† S. P. *Jennings* v. *Jones, post* 95.

As to effect of judgment obtained against an infant by neglect of
guardian *at litem* to plead infancy, see *Phillips* v. *Dusenberry,* (8 *Hun,* 348.

THIS was a proceeding to settle the accounts of Albertus Larrour, one of the executors of the last will and testament of Franklin Larrour, deceased.

Albertus Larrour, one of the executors of the last will and testament of Franklin Larrour, deceased, filed his accounts for final settlement. Amanda M. Larrour, widow of the testator, and co-executrix of the will, also the general guardian of two minor children of the testator, who were the residuary legatees and devisees under the will, appeared and contested the accounts in her own behalf, and as guardian of the minors. The accounts were referred to an auditor for adjustment, upon the coming in of whose report, a motion was made on the part of the executor to confirm the same, and on the part of contestants, exceptions were filed to various items, allowed as credits to the executor.

The facts which present the questions arising upon the exceptions, appear in the opinion of the Surrogate.

C. F. KINGSLEY *and* D. RAMSEY, *for the executor.*

A. HADDEN *and* WM. B. RUGGLES, *for the contestants.*

THE SURROGATE.—The will of the deceased, after directing that the dwelling house he is building should be enclosed, and that a sufficient quantity of his real and personal. estate should be sold, to pay and discharge all claims against his estate, gives the residue of his property, both real and personal, (subject to the lawful rights of his wife), to his two children who are minors. No other trust or power, except as above, is created or granted by the will. Amanda M. Larrour, his wife, is appointed executrix, and Albertus Larrour executor, both of whom have qualified as such.

The personal property, it appears, was insufficient to pay the debts, and several parcels of land have been

sold by the executors, the proceeds of which properly appear in the accounts.

The executor, Albertus Larrour, in his accounts presented for settlement, charges the estate with various sums for expenses incurred since the death of the testator in purchasing stock for, and in carrying on, the farm, owned by deceased in his lifetime, and in operating a saw-mill which belonged to him and deceased as tenants in common.

The auditor, to whom this matter was referred, has, in his report, allowed charges against the estate, of the character above specified to the amount of about two thousand dollars.

These charges are contested by the widow in her own behalf, and by the minor legatees and devisees, through her as their general guardian, on the ground that they did not accrue in the due and proper administration of the estate, or the proper discharge of duty of the executor.

It is claimed on the part of the executor, in answer to the objections made to these charges, that though not strictly legal, the expenditures they represent have been beneficial to the estate and were incurred at the request, or with the assent, of the widow and executrix, who is also the general guardian of the minors; and also that the specific objections now insisted on, were not taken before the auditor until the argument on the final hearing after the evidence had been closed.

In regard to the first of these grounds, it is not clear that the expenditures have been beneficial to the estate. The will requires sufficient of the personal and real estate to be sold, to satisfy all claims and debts against the testator. It does not authorize the purchase of farming stock, or the cultivation of a farm, or the operating of a saw mill; the general authority of the execu-

tor does not extend to the expenditure of money for any of these purposes. In consequence of such expenditure, a larger burthen of the debts has been thrown upon the real estate than would have otherwise been necessary. The auditor, in his report, allows the executor's charges against the estate after making certain specified deductions to the amount of $13,487.13. This sum includes about $2,000, made up of items which accrued in the transactions above referred to. It does not appear, so far as I can discern, that any considerable portion of the latter sum is represented by a corresponding increase in the amount or value of the assets of the estate. If this sum is deducted from the amount allowed to the executor there will be left less than $11,500 of legitimate charges against the estate, and had the assets in the hands of the executor been faithfully applied for proper purposes only, these charges might have been nearly satisfied out of the personal property. Instead of this, however, a large amount of real estate has been sold, the proceeds of which remains in the hands of the executor; this method of administration is not only contrary to law, but clearly defeats the intention of the testator as expressed in his will, and cannot be sanctioned or sustained. (*Stedman* v. *Feidler*, 20 *N. Y.*, 446; *Willcox* v. *Smith*, 26 *Barb.*, 316.)

The widow having assented to the unauthorized expenditure, and being in *pari delicto* with the executor is not in a condition personally to avail herself of these objections. Perhaps also, as the general guardian of the minors, she might be treated as having given her assent in that capacity, and left to account to them at the proper time for the waste of their estate. But, in my opinion, they are not bound by her acts in this respect, and should not be left to seek redress at a future day for what can be prevented now.

Upon this accounting, the widow as executrix has an interest apparently adverse to that of the minors. It would have been proper for the Surrogate to appoint a special guardian for the purpose of taking care of their interests. Had this been done, it clearly would have been the duty of such guardian to raise the objections now made; and it can scarcely be claimed, as it seems to me, that any act of the general guardian as such, or in her capacity of executrix, in assenting to a violation of his trust by the executor, would constitute a good answer to such objections: indeed, if the position of the general guardian is now such that she is precluded from raising objections to the allowance of illegal and unauthorized charges against the estate, it is the duty of the Surrogate to open the whole matter and appoint a special guardian for them for the purposes of this accounting. (*Dayton on Surrogates,* 469; *Brick's Estate,* 15 *Abbotts Pr. R.* 12–40.)

The suggestion that the unauthorized expenditure may be treated as a payment to the guardian out of the estate to which they are entitled is not entitled to consideration; the whole personal property was exhausted in the payment of debts and the legitimate expenses of administration. The authority of the executors over the real estate ceased with sale of sufficient thereof to complete the payment of claims and debts against the estate; they had no power to sell the same, or any part thereof, for the purpose of distribution. What the executors had no power to do, the guardian was not authorized to assent to. And since most, if not all, the objectionable charges are for purposes in no wise connected with the legitimate administration of the estate, or any trust or power created by the will, and do not represent money or property paid or delivered to the guardian as such, there is no ground for the claim that they can be disposed of as a payment to the guardian.

It is to be inferred from the auditors report, that he justified his allowance of the charges in question, not only on the ground of the assent of the co-executrix, but upon the further ground still insisted on by the executor, that the specific objection of want of authority in the executors to incur such charges, was not taken till the final argument before him, after the evidence was closed, and was thereby waived. I cannot regard this position as well founded, especially as these were minors whose rights ought not to be compromised. It is certainly the proper practice to require parties contesting the accounts of an executor or administrator, to point out, with reasonable certainty wherein they are claimed to be erroneous. The contestants, however, are not absolutely precluded by the objections first made; as it is frequently discovered in the course of the investigation that charges have been improperly inserted in the account, or credits to the estate have been omitted by the executor or administrator which the adverse party had no means of knowing when the account was first presented. (*Gardner* v. *Gardner*, 7 *Paige*, 112; *Westervelt* v. *Grigg*, 1 *Barb. Ch.* 469, 479; *Dayton on Surrogates*, 473.) When fresh objections are raised in the progress of the hearing, and they are such as may be obviated by evidence, the matter may be kept open by the auditor or the Surrogate, for the purpose of receiving such evidence.

My conclusion is, that the charges of the executor against the state for expenditures other than those which were necessary in the proper administration of the assets in his hands, or in execution of the powers specifically conferred by the will, should not be allowed.

On the other hand, money credited to the estate not proceeding legitimately from the assets or estate in his hands should be stricken from the accounts.

Among the items specified by the auditor as having accrued after the death of the testator in unauthorized farming and other operations, are several charges which may have been legitimate. Of this character are the charges for threshing grain in February, 1863. If this work was done to prepare for sale or market, the grain which was raised by testator the previous season, it was an expense incurred in the proper course of administration. So if the taxes paid in January, February, and March, 1863, were assessed against the testator in his life time, it was the duty of the executor to pay them.

I have not noticed several of the exceptions to the report, because they are either disposed of by the question already decided, or I am unable from the report or the evidence to make a satisfactory settlement, without a further hearing. If the parties cannot agree upon a settlement upon the basis indicated in this opinion, they may have a further hearing before me, or the matter may be referred back to the same or another auditor for settlement in accordance with this decision.

Ordered accordingly.