GEORGE BOWEN and another *vs.* ARAVESTA H. PETERS and others.

Penobscot. Opinion December 7, 1880.

*Shipping. Part owners' liability for materials and supplies. Managing owner; authority of.*

Where necessary materials and supplies for a vessel are ordered by one who is the agent, for that purpose, of the part owner in possession and control, they will be considered as ordered by such part owner. It is the act of the part owner by his servant.

The part owner of a vessel in undisputed possession will be regarded as having implied authority to bind the other owners for things necessary for the vessel and.its employment, unless the evidence discloses something to indicate that such implication of agency is contrary to the fact.

As to one who furnishes materials to make the vessel seaworthy, upon the order of a part owner in possession, the presumption of the authority of such part owner to bind all the owners for such goods remains, even if it be in the home port, unless there is something more than the single fact of the place of registry or enrollment, or of the owner's residence to remove it.

The ground of the liability of the owners under such circumstances is the possession and management of the vessel by one part owner without dissent by the others, and without anything to show that his conduct of the business was not, and was not understood to be, for all.

ON EXCEPTIONS.

The opinion states the case.

*Barker, Vose & Barker,* for the plaintiffs, cited: 16 Conn. 12; 36 N. Y. 26; 23 Maine, 461; 2 Paine, C. C. 202; 17 Maine, 147; 45 Maine, 590; Abbott on Ship. 4th Am. ed. 76, 69; *Putnam* v. *Wood,* 3 Mass. 485; 50 Maine, 447; 5 Selden, (9 N. Y.) 235; *Elder* v. *Larrabee,* 45 Maine, 590; 8 Wend. 144; 1 Parsons on Ship. 101.

*Wilson & Woodward,* for the defendants, Francis Gibbs and William Robinson.

The vessel was in a home port where the master could not bind the owners. *Jordan* v. *Young,* 37 Maine, 276. Charles Peters, the husband of the other owner, was not the ship's husband; two of the owners never knew of his acting or assuming to act in the affairs of the vessel.

1 Parsons on Ship. & Adm. 109, 111, 112; 3 Kent's Com. (12th ed.) 152. And Mrs. Peters, in making her husband her agent to transact the ship's affairs, made him the agent of the other owners without their knowledge or consent. This she could not do. If she had any authority herself she could not delegate it to another. Story on Agency, § § 13 and 14.

But a part owner has not a general authority to bind his co-owners and no authority to bind those who are not absent. 3 Kent's Com. 156, n. 1, on p. 155; *Brodie* v. *Howard*, 17 C. B. 109 (33 Eng. L. & Eq. 146); 1 Pars. on Ship. & Adm. 101.

Before a party can be holden for want of a dissent—because he has not objected, he must have an opportunity to dissent, to make objections. *Elder* v. *Larrabee*, 45 Maine, 590, seems to be decisive of this case upon this point.

SYMONDS, J. Assumpsit for the price of articles furnished to the schooner Globe, by the plaintiffs, ship chandlers in Bangor. The articles were necessary to make the schooner seaworthy; they were delivered on board and became a part of the vessel and outfit. They were ordered by the master and by Charles Peters, husband and agent of the first named defendant, a resident of New York, and the owner of thirteen-sixteenths of the schooner, who admits her liability by default. The defendant, Gibbs, a resident of Bangor, from which port the vessel hailed, was then the owner of two-sixteenths, and Robinson, the owner of the remaining sixteenth, resided in the town of Brewer, adjoining Bangor. The articles were charged to the vessel Globe, and owners, the plaintiffs not knowing who owned her, nor where she hailed from, nor how she was sailed. The question is not upon the quantity or price of the articles sued for, nor upon the necessity for them, but upon the liability of Gibbs and Robinson for repairs or materials which were in fact needed to make the schooner seaworthy.

The admission that Charles Peters, who with the master gave the order to the plaintiffs, was the agent of his wife in this respect is equivalent to an admission that the goods were ordered by her. It was the act of the principal by her agent, and the principal was then the owner of the larger interest in the schooner,

and in possession and control; neither of the other defendants assuming to interfere with the direction or management. The effect of the admission is, we think, that in this particular transaction the husband was the agent of the wife, and acted by her direction; not that he proceeded under a general authority to act for her in all matters pertaining to the management of the vessel. The case does not show an attempted delegation by one part owner of the power to bind another. It shows rather the act of the principal, the part owner, by her servant. A guardian, or an executor, cannot delegate his authority, but in many respects either may act by attorney. It is not necessary that everything done by them should be done personally. *Hutchins* v. *State Bank*, 12 Met. 427. In this case, if the husband was—as the case states—the agent of the wife for that purpose, and ordered the goods, then they were ordered by the wife through means which she employed.

The vessel was at the home port; where she was registered or enrolled, where one of the owners lived, and another was then represented by an agent; and the home of the third was near by. No difficulty of communication with the resident owners appears, nor necessity for immediate haste. The authority of the master, then, as such, did not extend to the ordering of these supplies on the credit of the owners. *Jordan* v. *Young*, 37 Maine, 276; *Dyer* v. *Snow*, 47 Maine, 254. Nor would the plaintiffs out of possession have any lien upon the schooner for materials so furnished, even if it was upon the order of persons having authority to bind all the owners;—except to the extent that such a lien is given by the statute. R. S., c. 91, § 7. *Read* v. *The Hull of a New Brig*, 1 Story, 244; *The General Smith*, 4 Wheat. 438; *Peyroux* v. *Howard*, 7 Peters, 324; *The Edith*, 4 Otto, 518.

But in the present instance the majority-owner and the master acted together; and no lien is claimed. The question, then, is, what authority had the owner of thirteen-sixteenths, or the master acting with her, to use the personal credit of the other owners to procure such repairs or outfit?

If one part owner, without authority from the others, repairs a vessel in a home port, he cannot recover of them any part of the money expended. *Benson* v. *Thompson*, 27 Maine, 470; *Hardy* v. *Sproule*, 31 Maine, 71.

When repairs are made in a home port, and the person making them by order of one owner knows who the other owners are, and, having the opportunity, neglects under certain circumstances stated to consult them, he must prove their assent to the repairing upon their credit in order to hold them. *Elder* v. *Larrabee*, 45 Maine, 590.

But in *Hardy* v. *Sproule*, *supra*, the court expressly reserves from decision the question whether recovery can be had, "where one part owner orders repairs or necessaries for the employment of the ship, on the credit of all, and they are furnished by third persons, without any dissent of a part owner made known to them, and an action is brought for the price by such third persons against all the owners."

In *Elder* v. *Larrabee*, *supra*, too, confining the decision to the facts of the case, that the non-assenting owner was known to the creditor at the time of the delivery of the articles charged, and that other matters affecting the relations between the owners and having a tendency to put the creditor upon his guard were then within his knowledge, the court adds, "whether the relation which subsisted between these parties, that of part owners, would enable a stranger to recover against the defendant (one owner) for repairs or necessaries for the use of the schooner ordered by Cushing (the other owner), on the ground of implied authority, we do not deem it necessary now to determine."

"It has been said that a part owner of a vessel is not liable to another for repairs made at a home port, without his consent. If made against his prohibition he would not be liable, but we should suppose his consent would be generally inferred, if the repairs were reasonable and proper and he made no objection. A considerable distinction exists in respect to all the powers of a part owner, a master, or a ship's husband, between the exercise of them abroad and in a home port. The reason is obvious. A ship far from its home might perish for want of aid which was

delayed until all the owners could be consulted. But if at home all who will have to pay have an unquestionable right to be consulted. It is not, however, quite certain whether the fact that a vessel is in the home port, which certainly limits these powers, goes so far as to destroy them. In other words, the question whether one part owner can bind another in a home port without specific authority may be regarded as still open." 1 Parson's Ship. and Adm. 101.

The cases cited indicate that our own decisions do not answer definitely the precise question proposed in this case; and the foregoing passage from Parsons, cited by the defendants, apparently leaves it neither beyond dispute nor free from doubt in all its phases on general authority.

We think it is true, as a general proposition, that a part owner of a vessel, in undisputed possession, will be regarded as having implied authority to bind the other owners for things necessary for the vessel and its employment, unless the evidence discloses something to indicate that such implication of agency is contrary to the fact. From the fact that a vessel, like any other chattel, is in the possession and management of one part owner, that the business in which the vessel is engaged is conducted by his authority, and that this state of things is acquiesced in by the other owners, a certain presumption arises that such possession of the common property, and conduct of the business pertaining to it, are in the interest and for the benefit of all; that the others assent to such use of their property, and expect to share the burdens and the gains. Under any state of facts which leaves this presumption in full force, the plaintiff is entitled to recover against all, for debts so incurred by the direct authority of one upon the credit of all. The authority of one, whose possession is acquiesced in, to act to this extent for all, is the proper inference from existing facts, unless in a particular instance something appears to limit or disprove it. As to one who furnishes materials to make the vessel seaworthy, upon the order of a part owner in such possession, even if it be in the home port, the presumption remains, unless there is something more than the single fact of the place of registry or enrollment,

or of the owner's residence to remove it; something to indicate that the controlling owner was not acting and managing the vessel for all, with their at least tacit assent, but on the contrary was proceeding independently of the others, in his own behalf, either in disregard of the rights of his associates and against their will, or by arrangement with them; so that his assumption of authority to bind them was wrongful. If the residence of the owners, not consulted, at the port of supply, was a fact not known to the creditor; but particularly if nothing was within his knowledge which tended to remove the *prima facie* presumption of authority and to put him upon inquiry; and more especially, still, if the case when presented shows at least by fair inference, that the possession and management of one had been acquiesced in by all without dissent,—all of which conditions are met by the present case, — then by the direction of the one so in possession, such necessary repairs and outfit may be charged to all, and recovery may be had against them. The goods charged were ordered by the authority of one who represented thirteen-sixteenths of the schooner, and was in undisputed possession. It is just to assume from the facts stated in the report, that such possession was not without the knowledge or against the will of the other defendants. We understand the statement in the report that "they have always protested against said bills and against the authority of any person to contract them upon their account or credit," relates only to the period subsequent to the contraction of the debts. Neither Gibbs nor Robinson assumed to manage the vessel. The presumption is not that they were entirely ignorant of what was done with their property, or indifferent to it, but on the contrary that they assented to it and expected to share in any profits derived from the business. For ships to be idle is a common loss. Public policy and private interest are alike promoted by their employment. It must be within the contemplation of all the owners that to use them will require repairs and renewal and replacement of furniture. Upon the facts disclosed in the report, we think the conclusion must be, that the two defendants last named took no part in the conduct of the business of the schooner, because they regarded the

management of the principal owner as their management, in the interest and for the profit or loss of all; and that the plaintiffs had a right to rely upon her authority to act for all to the extent of such needed furnishing. There is nothing to overcome the presumption arising from the circumstances and the relations of the parties, and the fact of agency within such limits is established.

"The part owners who employ a vessel are presumed to do so for the benefit and at the expense of all the owners who do not make known their dissent or disapprobation of the voyage. They may procure the necessary repairs, equipment and outfits for the vessel upon the credit of the owners." *Hall* v. *Thing*, 23 Maine, 463; *King* v. *Lowry*, 20 Barb. 532; *Stedman* v. *Feidler*, 25 Barb. 605; and 20 N. Y. 437. Compare, *Hardy* v. *Sproule*, 29 Maine, 258; *Robinson* v. *Stuart*, 68 Maine, 61.

In *Call* v. *Houdlette*, 70 Maine, 312, the plaintiff's part ownership was held to be *prima facie* evidence of his right to share in the earnings of the vessel, notwithstanding the recovery of a judgment therefor in the name of the other owner alone, just as here we hold it to be under the circumstances *prima facie* evidence of liability.

The case of *Brodie* v. *Howard*, 17 C. B. 109, cited *contra*, and similar cases, may be easily distinguished. In that case, the defendant in June, before the repairs were begun in August, had notified Lewis, the part owner by whose order the repairs were made, that he did not intend to sail her again, and Lewis had agreed to purchase his share, but the agreement was not carried into effect.

We regard the case of *Elder* v. *Larrabee, supra*, as exceptional, limited by a particular state of facts, rather than as indicating a general rule. Facts were there within the knowledge of the plaintiff, which tended to remove the presumption that the part owner who gave the order was authorized to act for the other. "The plaintiff knew that the schooner had been in the defendant's charge and under his sole control, as ship's husband, until within a few days of the time of making the repairs, that he had repaired her that spring, and sent her to sea." At that time the plaintiff and defendant each owned half of the

vessel; the plaintiff conveyed his interest to Cushing, who ordered the repairs soon after he had displaced the captain appointed by the defendant, without the latter's consent. It was the knowledge of these and other facts appearing in the case, tending to show that the owner in possession was not the agent of his associate in title, together with the knowledge of the place of the defendant's residence, which in the view of the court rendered it "the duty of the plaintiff under such circumstances, before attempting to charge the defendant, to ascertain whether he desired the repairs to be made, or at least to see that he had knowledge that they were to be made."

But we do not intend in this opinion to go at all beyond the facts and requirements of the present case. The ground of liability is the possession and management by the principal owner, without dissent by the others made known even to her and without anything to show that her conduct of the business was not, and was not understood to be, for all.

*Exceptions overruled.*

APPLETON, C. J., BARROWS, DANFORTH, and VIRGIN, JJ., concurred. PETERS, J., did not sit.