# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## OCTOBER TERM, 1862.

## SMITH v. OWENS.

A NOTE given in consideration of an antecedent indebtedness does not *per se* discharge the debt. In the absence of an agreement to the contrary, the only effect is to suspend the remedy until the maturity of the note.

Where, to an action upon a promissory note, an agreement of composition between the debtor and his creditors, including the plaintiff, is relied upon as a defense, such agreement must be specially pleaded, and cannot be considered under a plea of accord and satisfaction by the giving of new notes.

Where a defense is required to be pleaded specially, the omission to plead it is not cured by the introduction of evidence in support of it on the trial without objection on the part of the plaintiff.

If the creditors of a failing debtor agree between themselves, with the assent of the debtor, to a composition of their respective debts, and to receive in lieu thereof securities of a certain character, and one of the creditors subsequently obtains from the debtor new notes of a character more favorable to the creditor than those provided for in the composition agreement, such new notes are void for fraud, not only as to the other creditors, but as to the assenting debtor.

APPEAL from the Twelfth Judicial District.

The action was brought January 20th, 1858, by L. E. P. Smith and others, to recover $7,271 35, the full amount of four promissory notes of P. H. Owens & P. A. Owens, defendants, including principal and interest to that date. The answer is, substantially, that at the date of the action, the plaintiffs were not the holders and owners of the notes sued on; that the defendants were not indebted thereon, in any sum whatever; and that, after the notes had become payable, the defendants made and delivered to the plaintiffs, who accepted them, six other promissory notes (set forth) in full extinguishment, satisfaction, and discharge of the four notes sued on, and of one other note not sued on, of which six new notes one had become payable and been paid before suit brought.

The case was referred to a referee to try the issues and report a judgment. In due course he reported a judgment for the plaintiffs for the sum of $7,477 95, being the full amount claimed in the complaint, with interest, less $486 56 balance of a payment made by the defendants, and by him applied on the old note not sued on.

His finding of facts was as follows:

" 1st. At the respective times named in the amended complaint, the defendants made and delivered to the plaintiffs the four promissory notes, copies of which are contained in said complaint, and which notes are now held by the plaintiffs.

" 2d. On the first day of September, 1856, the said defendants made and delivered to the plaintiffs a certain other promissory note, in words and figures following, viz:

" ' $1,617 33.                    SAN FRANCISCO, Sept. 1, 1856.

' Six months after date we promise to pay to the order of Lewis E. P. Smith & Co., sixteen hundred seventeen 33-100 dollars, at their office in New York, value received.

' [Signed.]                       P. H. & P. A. OWENS.'

" 3d. That on the third day of February, A. D. 1857, at the city of New York, State of New York, the defendants made and delivered to the plaintiffs their six several promissory notes, all dated on that day, which notes were for the amounts, and were

indorsed and payable as set forth in the defendants' answer to the amended complaint.

" 4th. That said six several promissory notes last referred to, were made and delivered by the defendants to the plaintiffs, and by the plaintiffs accepted and received for and on account of the four promissory notes described in the complaint, together with the note above described, dated September 1st, 1856 ; but said six promissory notes were not delivered or accepted as full extinguishment, satisfaction, or discharge of said five former notes then outstanding in plaintiffs' hands.

" 5th. On the ninth day of June, 1857, the defendants paid to the plaintiffs the sum of $2,139 56, in satisfaction and discharge of the said note, dated February 3d, 1857, and payable in four months after date, and indorsed by John Owens, and said note was delivered up and canceled.

" 6th. On the trial before the referee, the plaintiffs' counsel tendered to the defendants' counsel the five other promissory notes, dated February 3d, 1857, and above referred to, and consented that they be canceled ; the same being on file in this cause as exhibits annexed to depositions taken on the part of the defendants, the said five notes remaining unpaid.

" 7th. That at the time of the commencement of the present action ; that is, immediately preceding the same, (the defendants not having appropriated or applied the payment of said sum of $2,139 56 to any one of the five old notes first above referred to) the plaintiffs applied the said sum in full payment of said note, dated September 1st, 1856, and the balance, after paying said note, to the general credit of the defendants.

" 8th. The plaintiffs' counsel also surrendered on the trial to the referee the said note, dated September 1st, 1856, and consented that the same be canceled or delivered to the defendants as paid ; the same being on file and annexed to the depositions taken in this case on the part of the defendants.

" 9th. That the rate of interest in the State of New York, where the said promissory notes were payable, is and was at the times aforesaid, seven per centum per annum on promissory notes after the maturity of the same.

"10th. That there remains due and unpaid on the said promissory notes described in the said complaint, after deducting therefrom the balance referred to in the seventh finding above, the sum of $6,471 31 principal, and $1,006 64 interest, to this date, making in all the sum of $7,477 95."

It was shown by evidence, that in December, 1856, the defendants were indebted to various persons and firms in New York, the aggregate amount of their indebtedness being over $24,000, of which, $8,363 11 was due the plaintiffs.

This indebtedness to the plaintiffs was in the form of promissory notes, five in number, of which but two were due in December, 1856, and the first four are those now in suit. The indebtedness to the other creditors was in the form of notes or book accounts.

The defendants could not meet their indebtedness, and on December 17th, 1856, the creditors, including the plaintiffs, entered into the written agreement which is set forth in the opinion.

The defendants became parties to this agreement between their creditors; and as between them and their other creditors (except the plaintiffs) the agreement was substantially carried out.

With the plaintiffs a subsequent arrangement was made by which they received defendants' notes at four and six months, indorsed by John Owens, for one-half their debt, and defendants' notes without indorsement, at two, three, and four years, for the other half of the debt, the whole secured by a policy of insurance on the life of P. H. Owens.

Of these new notes one was paid at maturity, and the others were in the hands of the plaintiffs at the time of the commencement of the action, and were not surrendered by them until during the progress of the trial before the referee.

On the report of the referee plaintiffs had judgment; defendants moved for a new trial which was denied, and from this order and the judgment the appeal is taken by them.

An opinion affirming the judgment was delivered by Justice Cope, the other Justices concurring, at the April Term of 1861, and at the same term, on application of defendants, a rehearing was granted, and the case was reargued and submitted anew at the following term.

Smith *v.* Owens.

*Eugene Casserly*, for Appellants.

I.   The agreement of December 17th, 1856, operated *per se* as a defense to the action.

The leading English case of *Good* v. *Cheeseman* (2 Barn. & Ad. 328, 333–345, by all the Judges) is precisely in point.   (See also *Cartwright* v. *Moore*, 3 B. & Ad. 703, 704.)

The agreement in the present case is not a composition, properly so called; but upon this point, the doctrine of compositions between an insolvent debtor and several creditors is applicable. (*Steinman* v. *Magnus*, 11 East. 390 ; 1 Smith's Leading Cases, 149*b*.)

It is not material whether or not all the creditors of appellants were parties to the agreement.   All were not required to be parties, either by its terms or by the law.   Those who became parties were bound.   (See *Eaton* v. *Lincoln*, 13 Mass. 424 ; *Norman* v. *Thompson*, 4 Eng. Exch. [W. H. & Gordon] *755 ; *Wood* v. *Roberts*, 2 Stark. 368, 369, 417 ; *Good* v. *Cheeseman*, above cited.)

The doctrine here asserted is no more than this, that if two or any larger number of a man's creditors should come together, and each should agree so and so, provided all the rest should do the same, the parties would be bound, though they were but a portion of the whole body of the creditors.

The agreement was binding, not only on the creditors (including the respondents) who signed it, but also upon the appellants, who, by their acts and their assent, express and implied, became parties to it.

Compositions and compromises, and agreements in that nature, between a debtor and his creditors are usually in writing, for convenience in the making and the proof, and for greater exactness ; and occasionally under seal, for more solemnity.   But when the original indebtedness rests in simple contract, as promissory notes, book accounts, etc., writing is not essential, and the agreement may be made and proved by parol, the acts of the parties, proof of assent, express or implied, like any other simple contract not within the Statute of Frauds, or not depending for validity on a seal, like the technical release from a single creditor

to his debtor.    (See *Good* v. *Cheeseman* and *Eaton* v. *Lincoln,* above cited.)

The facts in this case are much stronger than those in *Good* v. *Cheeseman,* in which all the Judges held the debtor, though he did not sign, equally a party with the four creditors who signed the agreement.

The respondents, and the other creditors who signed the agreement, and the appellants, being thus bound by it, it went into legal operation as between all the parties, (including the appellants and the respondents) and its legal operation as between the appellants and respondents was, immediately and without further performance by the former, to substitute an entirely new contract for, and in full satisfaction and extinguishment of the old indebtedness on the old notes.

The modes of compromise between creditor and debtor are various; but they will all be found to come under one of the following classes:

1st. When the compromise is between a single creditor and a single debtor.    This mode depends upon doctrines entirely peculiar to itself.    The rule in respect of it is: that payment of part of a debt past due, or the acceptance of security of equal degree and not affording a better remedy, cannot be set up as a defense to an action for the original debt.    The leading case is *Cumber* v. *Wane,* (1 Strange, 426—1 Smith's L. C. 146).    The doctrine of that case has never been satisfactory; and the history of the decisions since, especially in modern times, is the history of a continuous struggle of the Courts to take cases out of the operation of it, and to modify, limit, and even overthrow its authority, down to *Sibree* v. *Tripp,* (15 M. & Welsby, 23) in which, after full consideration, the English Court of Exchequer may be said to have greatly shaken, if not substantially overruled it.

For the authorities, more or less, against the doctrine of *Cumber* v. *Wane,* as well where the original indebtedness was unliquidated (being the first modification effected by the Courts) as where it was liquidated—see 1 Smith's L. C. 148, 149, 149*a;* and Notes of Hare & Wallace, 447–449; 2 Parsons on Cont. 129–131, and cases in notes *u, v, w, x, y; Johnson* v. *Brannan* (5 Johns. 268,

271); *Kellogg* v. *Richards* (14 Wend. 116); *Brooks* v. *White* (2 Met. 283); *Cooper* v. *Parker* (14 C. B. [78 E. C. L.] 118, 121).

It is needless to remark that this mode of compromise may always be made by release under seal; the seal supplying the necessity of a sufficient consideration, which is usually the point of difficulty.

2d. Where several creditors unite with their debtor in a composition or agreement for compromise, which, by its terms, express or implied, is conditional, so that unless the debtor performs all that is required of him, the compromise is void and the creditors are remitted to all their rights on the original indebtedness. In such cases the debtor, if sued on the original debt, can defend on the agreement of compromise or composition only by showing complete performance of it on his part. To this class of cases belong the following—in all of which, by the express or implied terms of the agreement, the old debt was to be released only upon payment or other performance of the agreement by the debtor, or upon some other condition, as that all or a certain number should sign: *Penniman* v. *Elliott* (27 Barb. 315)—though the reporter presses the rule beyond the facts and decision of the case; and see 1 E. D. Smith, 68; *Leake* v. *Young* (36 E. L. E. 188, 190, 191, 193); *Rosling* v. *Muggeridge* (16 M. & Wels. 181); *Paulin* v. *Kaighn*, (3 Dutch. 503, 513).

3d. A third mode of settlement between several creditors and their debtor is, as in the present case, where they become parties to a new agreement, which by its terms or legal effect otherwise, is at once substituted for and in full extinguishment of the original contract of indebtedness. In every such case, the previous debt being extinguished and the remedy of the creditor on it gone, his recourse is on the new agreement for any breach of it by the debtor.

There is, doubtless, some confusion and conflict in the cases; in part only apparent, and in part the result of not sufficiently observing the difference in principle between this third class of agreements and the other two. But the doctrine just stated is one of the oldest in the law, and is sustained by a great weight of authority and a strength of principle that is overwhelming.

The best considered modern case on the subject is *Good* v. *Cheeseman*, which in its facts is abundantly in point.

It is laid down in *Reniger* v. *Fogossa* (1 Plowd. 5a) that an agreement which is effectual as a defense is such an agreement as is executed and satisfied " with a recompense in fact, " " or with an action or other remedy to execute it and to recover a recompense ; " thus recognizing the principle. (See also Id. 6, 5 ; *Cartwright* v. *Cooke*, 3 Barn. & Ad. 701.)

In *Boyd* v. *Hind* (40 Eng. Law & Eq. 428) the case of *Good* v. *Cheeseman* is discussed with marked approbation by the Court ; and the important distinction is pointed out between an agreement in which several creditors unite and one made between a single creditor and his debtor. The Court says (p. 431) :

" The law with respect to defenses founded on compositions between debtors and his creditors appears not to have been distinctly defined until the case of *Good* v. *Cheeseman*. It used to be sometimes laid down, that a right of action once vested could only be divested by a release, or by accord and satisfaction ; but since the decision in that case, the law has been regarded as settled that a composition agreement by several creditors, although by parol so as to be incapable of operating as a release, and although unexecuted so as not to amount in strictness to a satisfaction, would be a good answer to an action by the creditor for the original debt, if he accepted the new agreement in satisfaction thereof, and that for such an agreement there is a good consideration to each creditor— namely, the undertaking by the other compromising creditors to give up a part of their claim. But no such agreement can operate as a defense if made merely between the debtor and a single creditor. The other creditors, or some of them, must also join in the agreement with the debtor and with each other ; for otherwise, it would be a bare contract to accept a less sum in satisfaction of a greater, which would be invalid by reason of want of consideration for relinquishing the residue."

To the same effect are *Evans* v. *Powis* (1 Eng. Exch., W. H. G., \*601, \*607–608) ; *Wood* v. *Roberts* (2 Stark. 368, 369)— approved and explained in *Boyd* v. *Hind* (40 Eng. Law & Eq. 432). In *Cockshott* v. *Bennett* (2 T. R. 763) it was held by

Ashurst, J., that, by the composition in that case between a debtor and his creditors, the original debt was " annihilated."

The doctrine and the reason of it are applied or approved in several American cases.

*Goodrich* v. *Stanley*, (24 Conn. 620, 621) discussing the principle and the authorities.

*Coit* v. *Houston* (3 Johns. Cases, *246)—per Thompson, C. J.

*Billings* v. *Vanderbeck* (23 Barb. 546, Gen. T.)—held, "An accord unperformed consisting of mutual promises, and thus having a new consideration, is binding upon the parties, and an action will lie for a breach of it." (Pages 552, 523, citing *Cartwright* v. *Cook*, 3 Barn. & Ad. 701, etc; see also the agreement in the case, p. 547; *Kinsler* v. *Pope*, 5 Strobh. 128; *Paulin* v. *Kaighn*, 3 Dutch. [N. J.] 503, 513; *Brown* v. *Stackpole*, 9 N. H. 478; 2 Parsons on Cont. 194; 1 Smith's L. C. *150; 2 Greenl. Evid. sec. 31, notes, 32; Story on Cont. sec. 982; Byles on Bills, *183, note *d; Houghtaling* v. *Randen*, 25 Barb. 21, 22; *Campbell* v. *Jones*, 6 T. R. 570–573; 1 Tidd Prac. 2d Ed. *440.)

Such being the effect and operation of the agreement of December 17th, 1856, between the creditors, including the respondents and the appellants, it was not in the power of the respondents, without the consent of all the other creditors, by any private understanding with the appellants, to abandon the agreement, or in any manner so to vary it as to have the old notes remain in the hands of the respondents and remit them to their original rights upon them; and all the testimony to that point is immaterial and of no effect. The retention of the old notes, with or without the consent of the appellants, by the respondents, was a breach of the agreement, and the attempt to enforce them in the present suit is a fraud upon the other creditors.

Nothing is better settled in law than that in compositions or agreements in that nature between a debtor and his creditors perfect good faith is exacted from all the parties to each other. The attempt of one creditor to obtain an undue advantage for himself over the rest, with or without the consent of the debtor, is a fraud which the law will never allow to succeed. And it is not material by whom the question is brought before the Court; whether on the·

complaint of one or more of the other creditors or upon the show-
ing of the debtor himself in a suit by the unconscionable creditor,
which latter is the usual mode.

So far is this principle carried, that such a defense may always
and under all circumstances be set up by the debtor in a suit
brought by the unjust creditor upon any security thus improperly
obtained by him, whether of the debtor or of a third party; and
money so paid may be recovered back from the creditor. (1 Story
Eq. Jurisp. secs. 378, 379, and cases cited; *Good* v. *Cheeseman*,
2 B. & Ad. 328, 333–335, and cases cited *ante; Breck* v. *Cole*,
4 Sandf. 79, and full discussion of the cases, 82–88; *Russell* v.
*Rodgers*, 15 Wend. 354, 355, and cases cited and discussed; *Stock*
v. *Mawson*, 1 Bos. & Pull. 286—money recovered back from the
creditor; *Steinman* v. *Magus*, 11 East. 390.)

II.   If it shall be considered by the Court that the legal effect
of the agreement of December 17th, 1856, was not as contended
in the preceding point, then, at all events, the conduct of the
respondents, taken in connection with the agreement and the acts
of the other creditors under it, in accepting the new notes from the
appellants and enforcing and receiving payment of the first of them
after default made upon them, constituted a defense to this action
upon the old notes.

III.   The new notes in the respondents' hands being securities
under the agreement of December, 1856, and they having retained
them and having elected (after default made by the appellants in
the payment of the first of the new notes) to look to them as their
security and enforce payment, they could not afterwards fall back
upon the old notes.

Plaintiffs accepted the new notes as an entirety in the first place
under the agreement of December, 1856. Whether they then
accepted them conditionally or not, they afterwards affirmed them
by collecting the first of them after maturity; and they affirmed
them as an entirety and unconditionally. They could not do other-
wise.   In the nature of the case, they had either to affirm or reject
*in toto*. (*Conkling* v. *King*, 10 Barb. 372, 376, and cases cited—
this case affirmed in Court of Appeals, April, 1854; 4 Clinton Dig.
192, sec. 16; *Hunt* v. *Silk*, 5 East. 449.)

To hold otherwise would be most unjust to the other creditors, and contrary to the doctrine of *Mackenzie* v. *Mackenzie*, (16 Ves., Jr., \*372) and of 2 Spence, \*354.

The tendency of the later cases is in favor of the presumption of law, that where new notes are given before the old notes are due, and in exchange for them, and especially where the security of a third person is given, it is in satisfaction unconditionally. (*Arnold* v. *Camp*, 12 Johns. 409, \*410–411, and cases cited; *Frisbie* v. *Larned*, 24 Wend. 450, 451, 454; *Boyd* v. *Hitchcock*, 20 Johns. 76; *Brooks* v. *White*, 2 Met. 283–288.) As to payments before the day. (*Pinnel's Case*, 5 Coke, 117*a*; *Brooks* v. *White*, Met. 286, 287; *Page* v. *McCrea*, 1 Wend. \*164; *St. John* v. *Purdy*, 1 Sand. 9–11.) *A fortiori* in a case like the present.

IV. The referee's finding of facts does not support his conclusions of law.

The fourth finding evidently proceeds upon the idea that the agreement between the appellants and their creditors was not a defense. The grounds of this are not stated; but they must be either that the agreement was not carried out by the appellants, by the giving and payment of the new notes, and so became null and void as to all the creditors, or that, by some private understanding between the appellants and respondents, not assented to by the other creditors, the agreement was abandoned and a special arrangement entered into by which the old notes were left in the hands of respondents, who were remitted to all their original rights upon them. Neither ground can be sustained under the authorities hereinbefore cited.

It is held, that in assumpsit for goods sold it is a good plea in bar that the defendant, being the payee of the note of a third person, indorsed it to the plaintiff, who "received and accepted it for and account of" the debt; being the precise language of this finding. (*Kearslake* v. *Morgan*, 5 T. R. 513, 514, 518; 1 Bacon Abr. 56, 57, "Accord," A; *Thomas* v. *Heathorn*, 2 Barn. & C. 477.)

Now, it would seem that whatever is a good defense, if pleaded, must equally—and even *a fortiori*—be so if found as a fact by a referee or by the verdict of a jury. Hence, it follows that the first part of this fourth finding is in direct contradiction of the latter

part; that one part destroys the other, leaving the whole a nullity. If this be so, there is nothing to support the referee's decision as to his conclusions of law that the appellants were indebted upon the old notes.

*Holladay & Carey,* for Respondents.

I. The agreement of December, 1856, is not set up in the answer, and no defense can be predicated upon it. The appellants had their option to rely upon this agreement as a composition, or upon the new notes, and they elected to plead, as a bar to this action, the new notes.

II. It is everywhere admitted that the extinguishment of one cause of action by the substitution of another of the same degree, can only be by way of accord and satisfaction which requires a distinct and executed agreement between the parties, and cannot be implied by the law in the absence of such an agreement.

In *Clark* v. *Mundol* (1 Salk. 124) it was held, "that a bill should never go in discharge of a precedent debt, except it be a part of the contract that it should be so."

The rule thus laid down, which has never been disputed in England, is well illustrated by the case of *Tobey* v. *Barber* (6 Johns. 310) and is followed in most of the States of this country, where it is generally admitted that taking a negotiable instrument made by a debtor, or by a third person, on account of a preëxisting debt, does not imply a discharge or extinguishment of the demand for which it is taken, nor confine the creditor to proceeding in the new cause of action, unless such was the understanding of the parties. The existence of such an agreement is, in general, a question for the jury, although it would seem to be the duty of the Court to instruct them, that the mere fact of accepting such an instrument as payment, without more, will not sustain a finding, that it was accepted as satisfaction. But for a full discussion of this whole matter see 2 Ames' Leading Cases, 3d ed., title, Note or Bill taken for Debt, 162–179, and cases there cited; also 12 Cal. 317.

III. The agreement of December, 1856, even if it could be considered under the pleadings, constitutes no defense, for the reason that it was not carried out, but was ignored and abandoned. The

new notes were not given in pursuance of the agreement, but in direct opposition to its terms.

COPE, J. delivered the opinion of the Court—NORTON, J. concurring.

A rehearing was granted in this case for the purpose of considering more fully the matters relied upon by way of defense. After giving these matters the consideration which their importance deserves, we see no reason for a conclusion different from that previously attained. The action is upon four promissory notes, and it is alleged in defense, that before the action was commenced the defendants executed to the plaintiffs certain other notes in satisfaction of the notes in suit. This is the only defense set up, and the finding of the referee, that the new notes, though given on account of the old, were not received in satisfaction, is undoubtedly correct.

We have repeatedly held, that a note given in consideration of an antecedent indebtedness does not *per se* discharge the debt; and that in the absence of an agreement to the contrary, the only effect is to suspend the remedy until the maturity of the note. There was no agreement upon the subject in this case, and the only difficulty that suggests itself grows out of a paper executed in the city of New York, which reads as follows: " We, the undersigned, hereby agree to extend the time of payment of the indebtedness of Messrs. P. H. & P. A. Owens, ship-chandlers of San Francisco, to us, so that the aggregate of their outstanding debts, or notes, shall become due in four equal payments of six, twelve, eighteen, and twenty-four months from date, with interest at seven per cent. per annum, and to accept their notes to that effect in exchange for those now held by us." This paper is signed by various parties, including the plaintiffs, and, except as to the latter, appears to have been substantially carried out by an exchange of notes upon the basis therein mentioned. In respect to the latter, the proof shows that it was not intended to be acted upon, and the notes subsequently executed were given, not only in disregard of, but in direct repugnance to its terms. This being the case, the paper and the notes are to be regarded as separate transactions, and upon the question of satisfaction the paper has no bearing or relevancy. It is con-

tended that the paper itself operates as a defense, and the counsel for the defendants has placed on file an able argument in support of this view. The argument is met, however, by the fact that this defense is not pleaded, and the failure in that respect precludes the defendants from taking advantage of it. The case is that of a compromise between debtors in failing circumstances and their creditors, and counsel is correct in saying that in such matters the law requires the utmost good faith. The parties are held to a strict and literal compliance with their agreement, and secret arrangements securing advantages to particular creditors are absolutely void. And they are not only void as to other creditors, but even as against the assenting debtor, and the Courts have uniformly refused to enforce them. (Story's Eq. sec. 379.) The notes were executed in fraud of the compromise, and tested by the agreement they are void; but whether void or valid the result is the same. In either case the plaintiffs are entitled to recover, for there is no evidence to sustain the answer, and no foundation for a defense upon the agreement. It is true, the agreement was given in evidence without objection, but the case must be determined upon the issue presented in the pleadings. The only question is whether the notes were received in satisfaction, and there is no doubt that the referee arrived at the proper conclusion.

The judgment is affirmed.