[No. 12466.  In Bank. — December 29, 1888.]

# COMPTOIR D'ESCOMPTE DE PARIS, APPELLANT, *v.* WILLIAM DRESBACH ET AL., RESPONDENTS.

APPEAL — REVIEW OF CONFLICTING EVIDENCE. — The verdict will not be interfered with on an appeal on the ground of insufficiency of the evidence to justify it, if the evidence is conflicting.

CONDITIONAL PAYMENT BY CHECK — DISHONOR OF CHECK — INSTRUCTION. — When the trial of an issue involves a question of payment of a debt by a check which was dishonored, it is error to refuse to instruct the jury that when a check is given in payment of a debt it is only accepted on condition that the check be paid, but if dishonored, the creditor may resort to his original claim, on the ground that there has been a failure of the condition on which the check was taken. A check or note is only a conditional or provisional, and not an absolute, payment of the debt for which it was given, and does not extinguish the debt unless it is expressly agreed it is accepted as payment. (PATERSON, J., dissenting.)

ID. — AGREEMENT FOR PAYMENT BY CHECK — INSTRUCTION. — The agreement for absolute payment by note or check must be mutual between the debtor and creditor, and it is error to instruct the jury that "if it be accepted by the creditor by his own voluntary act or choice as payment, and in satisfaction of the debt, such acceptance would establish payment of such debt." (PATERSON, J., dissenting.)

ABSOLUTE PAYMENT BY CHECK. — When a check is taken by agreement as absolute payment of a debt, the creditor takes all the risk of its payment.

ID. — ACCEPTANCE OF CHECK BY MANAGER OF BANK — CONSTRUCTION OF EVIDENCE. — The language of a witness who is manager of a plaintiff bank, in stating that a check which was afterward dishonored was accepted in payment of the debt sued upon, should not be construed as signifying anything more than the provisional or conditional payment presumed by law, and is no evidence of absolute payment.

ID. — RECEIPT OF PAYMENT IN FULL. — A written receipt of payment in full does not establish a positive agreement for absolute payment when the payment is by a bill or note.

ABSTRACT INSTRUCTION. — An abstract instruction, which there is no evidence to justify, and which is calculated to mislead the jury, is erroneous.

RECEIPT — AGENCY — EVIDENCE. — A receipt is always open to explanations, and the purpose for which it was given may be shown. Receipts shown to have been given by a book-keeper of the defendants as mere memoranda or vouchers, to be used as such by a third party who was dealing with the plaintiff, and to have been given in the name of the plaintiff instead of such third party, with the knowledge, authority, consent, or subsequent ratification of the defendants, cannot charge the defendants with liability for money received of plaintiff, on the admissions appearing upon the face of the receipts.

| | |
|---|---|
| 78 | 15 |
| 94 | 366 |
| 78 | 15 |
| 106 | 530 |
| 78 | 15 |
| 112 | 306 |
| 78 | 15 |
| 120 | 447 |
| 78 | 15 |
| 122 | 33 |
| 122 | 372 |
| 78 | 15 |
| 124 | 92 |
| 78 | 15 |
| f128 | 515 |
| 78 | 15 |
| 137 | 668 |
| 78 | 15 |
| 149 | 275 |

BROKERS — PRINCIPAL AND AGENT — ASSUMPSIT — EVIDENCE. — In an action of *assumpsit,* when the defense is that certain brokers who dealt both with the plaintiff and with the defendant dealt with the plaintiff as principals on their own account, and not as agents of the defendant, if evidence is offered by the plaintiff to show that such brokers were doing a general brokerage business, and did not furnish money as principals to any persons, including certain third persons named, evidence is admissible for the defendants in rebuttal to show that such brokers did furnish money to such third parties as principals, and not as brokers.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Wilson & Wilson,* and *Loughborough & Newhall,* for Appellant.

The mere acceptance of a check is not payment of the debt for which it is given, but it is always taken subject to payment at the bank in due course of business, and upon that condition alone. (2 Benjamin on Sales, sec. 1083, p. 944; Story on Bills, sec. 419; *Weddigen* v. *Boston E. F. Co.,* 100 Mass. 423; *Whitney* v. *Esson,* 99 Mass. 308; 96 Am. Dec. 762; *Small* v. *Franklin M. Co.,* 99 Mass. 277.)

*Pillsbury & Blanding,* and *F. C. Lusk,* for Respondents.

THORNTON, J. — Appeal by plaintiff from the judgment and order denying its motion for a new trial.

The action was brought by plaintiff to recover of respondents the sum of $52,401.60, and interest, for money lent and advanced to the latter by the former.

The action was commenced against William Dresbach and Hugh J. Glenn, as copartners under the firm name of William Dresbach, but in consequence of the death of Glenn, and also of the first administrator of his estate, N. D. Rideout, the second administrator was substituted as a party, and the action came to be against Dresbach and Rideout, administrator of the estate of Glenn, deceased.

It is argued that the evidence was insufficient to justify the verdict. We have read and considered the argument of the counsel for plaintiff on this point, and have weighed the testimony, and are of the opinion that the evidence is of such a character as to forbid this court from sustaining this contention. There is evidence tending to prove that plaintiff dealt with Helmrich and Hansen as principals, and that their loans were made to them, and not to Dresbach and Glenn; and there is also evidence tending to show that Dresbach and Glenn were principals, and that Helmrich and Hansen were their brokers and intermediaries, and obtained these loans for their account. In other words, the evidence on this point is conflicting, and under the well-settled rule of this court, it cannot interfere with the verdict on the ground urged.

The defendants contend, first, that Dresbach and Glenn transacted the business matters involved herein with Helmrich and Hansen as principals, and not through Helmrich and Hansen as the agents of Dresbach and his partner; and secondly, that if the business was transacted between the plaintiff and Dresbach and Glenn through Helmrich and Hansen as their agents, the indebtedness sued for herein was paid.

It appears that the indebtedness sued for herein was contracted by advances made on wheat shipped by Dresbach and Glenn on the ship Scandia. The business was carried on in this way: Dresbach would put the wheat on board the Scandia, bound to a foreign port, in parcels of several thousand sacks; for each parcel so placed on board, the mate of the vessel would give a receipt, specifying the number of sacks, and that they were received of Dresbach. The latter would hand over these receipts to Helmrich and Hansen, who would take them to the plaintiff, and on these receipts, which were retained by plaintiff as security, it would make the advances.

The advances seem to have been made on each parcel of wheat for which a receipt was issued by checks drawn

payable to the order of Helmrich and Hansen. When the ship was fully laden, or it had received all the wheat to be shipped on it, Helmrich and Hansen would obtain from the plaintiff the mate's receipts and deliver them over to the master, who would give a bill of lading in their place, and take up or retire the mate's receipts. A bill of exchange would then be drawn by Dresbach against the wheat shipped, and delivered to Helmrich and Hansen along with the bill of lading and other documents. The bill of lading and other documents would be attached to the bill of exchange, and go forward with it. Helmrich and Hansen would then sell the bill of exchange, and with the proceeds derived from its sale return to the plaintiff the amount of its advances. Sometimes the bill of exchange was sold to the plaintiff. In such case it would retain the amount of its advances, and if the amount of such proceeds was not sufficient to reimburse plaintiff, Helmrich and Hansen would pay the balance due in money. In case the proceeds exceeded the amount due for advances, the plaintiff would pay the surplus to Helmrich and Hansen.

In the case of the shipment by the Scandia, the master was ready to deliver the bill of lading on the 25th of September, 1882. On that day Hansen, who attended to the out-door business of his firm, called on the plaintiff and procured from it the mate's receipts on which advances had been made, took them away with him, and returned with the bill of exchange drawn as usual, and with the bill of landing and other documents. The plaintiff, for the reason that it then held as many bills on the house on which the bill on the shipment per Scandia was drawn as it was willing to take, declined to purchase this bill. Hansen then had to sell the bill, and with its proceeds return the advances. A settlement was on the day above mentioned had between the plaintiff and Hansen, and it was found that there was due for the advances per Scandia a sum of $44,000. On the same day the plaintiff sold

to Helmrich and Hansen a bill or bills of exchange on Hong-Kong for £4,000 for $19,739.30, and delivered this exchange to Hansen. For the sums above mentioned, amounting to $63,739.30, Hansen drew in the name of his firm a check on the Pacific Bank, and delivered it to the plaintiff. This check was received about three, P. M., or about three minutes before, at an hour too late to present it for payment at the Pacific Bank on that day, but some time on that afternoon the plaintiff sent this check to the bank for certification, which was refused.

The check was on the next day deposited to credit of plaintiff with the Bank of British Columbia. Hansen informed the manager of the plaintiff that the check would not be paid, and asked for further time. Hansen requested that plaintiff take up the check and grant further time, and the plaintiff, on this request, sent its check on the Bank of British Columbia for $63,000 to the Pacific Bank, to be passed to the credit of Helmrich and Hansen, that the check of the latter for $63,739.30 might be paid. The Pacific Bank then paid the check of Helmrich and Hansen and returned it to the plaintiff, who delivered it to Helmrich and Hansen. It does not appear the latter ever paid anything on this check, but that it was in fact taken up by plaintiff. Nor was any portion of the advances made by the plaintiff on the wheat shipped per Scandia ever paid to it by any one, unless the check drawn by Hansen on the 25th of September, 1882, was received by the plaintiff in absolute payment and discharge of such advances.

In reference to this payment by check, the plaintiff by its counsel requested the court to direct the jury as follows: " When a check is given in payment of a debt, it is only accepted on condition that the check be paid, but if dishonored, the creditor may resort to his original claim, on the ground that there has been a failure of the condition on which the check was taken."

The court refused to give the foregoing, and gave to

the jury the following: " If a promissory note, bill, or check of a third person be accepted by a creditor by his own voluntary act or choice, as payment and in satisfaction of a debt, such acceptance would establish payment of such a debt."

The plaintiff excepted to the refusal of the court to give the requested direction, and also excepted to the giving of the instruction just above set forth.

The court below clearly erred in refusing plaintiff's request. The check in this case was dishonored. If it was not presented to the Pacific Bank for payment, but only to be certified, it distinctly appears that it was not presented for payment, because the plaintiff was told by Hansen more than once on the day following its date that it would not be paid. It was said in *Smith* v. *Harper,* 5 Cal. 330: " When the holder of a note accepts a draft or note in payment, it has usually been held that he is not bound to give up the note before payment of the draft or check." It has been repeatedly held by this court that the acceptance of a note for a debt does not discharge the debt unless expressly agreed to be payment; that in such case the right of action on the debt is suspended until the maturity of the note given, and suit may be brought on the original debt in case of the non-payment of the accepted note. (See *Brewster* v. *Bours,* 8 Cal. 501; *Griffith* v. *Grogan,* 12 Cal. 317; *Higgins* v. *Wortell,* 18 Cal. 333; *Crary* v. *Bowers,* 20 Cal. 89; *Smith* v. *Owens,* 21 Cal. 11; *Brown* v. *Cronise,* 21 Cal. 386; *Welch* v. *Allington,* 23 Cal. 322; *Mitchell* v. *Hockett,* 25 Cal. 542; 85 Am. Dec. 151; *Brown* v. *Olmstead,* 50 Cal. 162; *Crawford* v. *Roberts,* 50 Cal. 236.)

The language used in the opinions is, unless it is *expressly agreed* that the note is accepted as payment, it is not payment, and the debt is not extinguished. As in *Griffith* v. *Grogan, supra,* it was said by Field, J., speaking for the court in regard to a note, " Unless received by *express agreement as payment,* it did not extinguish the debt."

Subsequently in the same opinion he cites *Tobey* v. *Barber*, 5 Johns. 63, as " the leading American authority on the point," and quotes the rule of the opinion in that case as follows: " The taking of the note was no extinguishment of the debt due for the rent. It is a rule well settled and repeatedly recognized in this court that taking a note either of the debtor or of a third person for a preexisting debt is no payment, unless it be expressly agreed to take the note as payment, and to run the risk of its being paid; or unless the creditor parts with the note, or is guilty of laches in not presenting it for payment in due time. He is not obliged to sue upon it; he may return it when dishonored, and resort to his original demand. It only postpones the time of payment of the old debt until a default be made in the payment of the note."

That a check is only provisional or conditional and not absolute payment of the debt for which it is given, in the absence of an agreement to that effect, we consider clearly established law. We find the law on this question admirably well stated in *Blair* v. *Wilson*, 28 Gratt. 171, 172, et seq. It is there said: " The giving of a check for an antecedant debt is not an absolute payment and extinguishment of the debt, in the absence of an agreement giving it that effect. Ordinarily, it is only a means of payment, and the debt will not be extinguished unless and until the check be paid, or unless loss be sustained by the drawer in consequence of the laches of the holder, in which case the debt will be discharged in proportion to the loss sustained. If the check be not paid, and the payee is without fault, his right of action against the drawer for the debt, which has been merely suspended by the giving of the check, revives, and he may have recourse to the drawer, either upon the debt or upon the check, at his option."

This rule is thus stated in 2 Benjamin on Sales, sec. 1083 (see American edition with notes by Corbin): " A

check is accepted as a particular form of *cash payment*, and if dishonored, the vendor may resort to his original claim, on the ground that there has been a defeasance of the condition on which it was taken." It makes no diference that the check is that of a third person.

The authorities to sustain this rule are cited in notes *n* and 19 to section 1083, above cited,—note *n* containing the English, and note 19 the American, cases. Any more particular reference to the cases is entirely unnecessary.

The instruction above quoted, which was given, in our view eliminates from the rule above stated any agreement between the debtor and creditor that the check was taken in absolute payment. The voluntary act of the plaintiff alone is referred to, and the jury are told that if, in their opinion, the creditor by his acts disclosed his will to accept the check " as payment and in satisfaction of a debt, such acceptance would establish payment of such debt."

There is not the least evidence that there was any express agreement between the drawers of the check and the plaintiff when it was delivered by the drawers to the latter. Nothing was said at that or any other time in regard to such acceptance of the check. In fact, what occurred at that time disproves that any such agreement was made, and nothing then occurred from which any such agreement could be implied. On the contrary, Hansen, at the time when he delivered this check, requested the plaintiff's manager not to send it to the Pacific Bank on that day, stating at the same time that he had not made his account good,—had not sold the exchange on the cargo per Scandia. Hansen testifies that he said to the manager of the plaintiff, De Guigne, with whom he was transacting this business: " Now, Mr. De Guigne, it is now two minutes to three, or three o'clock. Don't put the check through to-day, because I have not made my account good, — sold the bill of exchange."

We find no evidence of an agreement, express or implied, made between the parties to this transaction that the check was accepted as payment in full, and absolutely. As to any delay in presenting this check, it may be conceded that there is no evidence of it, and such as there was was advised and consented to by Dresbach.

It may be further said that when one accepts a check in absolute payment, he takes all the risk of the payment of the security so taken. Is it to be supposed that Hansen would have asked De Guigne to accept the check as absolute payment, and take the risk of its payment, when he had informed the plaintiff's manager that his balance in the bank on which he drew the check was insufficent to meet it? or that De Guigne, under such a state of facts, would have thought of accepting the check in payment, and taken all the risks of its being paid? It is manifest that the idea of an agreement of any kind, either express or implied, that the check should be accepted in absolute payment, finds no support in the evidence, and was not even mentioned in the whole transaction.

The instruction seems to have been based on some answers of De Guigne to questions put to him on cross-examination by counsel for defendants, in which he spoke of the check, and used the word " payment" in connection with it.

We insert here the questions and answers which are quoted in respondent's (defendant's) brief.

De Guigne is asked as to the check, and by whom it was signed, to which he answers: —

" Signed by Mr. Hansen, in payment of these mate's receipts partially, and partially in payment of a draft for four thousand pounds that he had bought of me on the Hong-Kong and Shanghai Bank."

" Q. When you say in payment of the mate's receipts, do you mean the payment of advances by you on the mate's receipts ? A. Yes, sir."

And again, speaking of the check, he (De Guigne) said: —

"Mr. Hansen told me that the check he had given me in payment for these mate's receipts could not be paid."

Speaking of the bill on Hong-Kong which the plaintiff had sold Hansen's firm, and delivered to Hansen, and the amount to be paid for it, he is asked:—

"Q. And you added that right into this check? A. In payment for it, — yes, sir."

"Q. Then you took this check in payment of that exchange, did n't you? A. Yes, sir.

"Q. As you have stated before, you took the check in payment of advances on mate's receipts and in payment of exchange,— that is what you said? A. Yes, sir, I said so."

With reference to the amount due for the Hong-Kong bill, and the advances on the wheat shipped per Scandia, the witness is asked: —

"And the two were put together. He gave you, in payment for both, this check for $63,739.30? A. Yes, sir."

This is the character of evidence on which the above instruction was given. We say it was given on this evidence, for the reason that we find no other evidence, and no other has been called to our attention, on which it could have been based.

We have seen that the rule of law is, that a check is not considered absolute payment of a debt unless it is expressly agreed to be taken as such, and in case of such agreement the creditor takes the risk of the payment of the check from the time of his acceptance of it. The language of the witness on this point amounts to no more than this, that he took or accepted the check in the usual manner in which a check is taken, in payment of the advances and of the amount due on the bill of exchange,— that is, as a conditional and provisional payment. Payment does not necessarily

mean absolute payment; we have seen that where a check or note is accpted in payment of an antecedent debt, the presumption is, that it is taken as conditional or provisional payment,—that it is payment founded on the condition that the check or note is paid. If the check is not paid when regularly presented, or the note is not paid when it matures, there is no payment of the debt. Under the facts of the case before us, the language of the witness De Guigne should not be construed as signifying anything more than provisional payment. This is the ordinary and popular meaning of the word, when applied to a transaction like the one before us. It would be doing great injustice to the witness to hold that he intended by the use of the words which appear in his testimony above quoted to put the bank of which he was manager in the position of taking upon itself the risk of this check being paid on presentation, or that he meant anything more than the provisional or conditional payment presumed by the law when a check is received in payment of a debt, and nothing further is said.

In *Tobey* v. *Barber,* 5 Johns. 68, 4 Am. Dec. 326, a receipt was given by plaintiff to defendant in these words: " Received of Ralph Barber one hundred and sixty-three dollars on account of the within lease, and in full for the second and third quarters' rent." The action was brought to recover the rent mentioned in the receipt.

It appeared in evidence that the payment for which the receipt was given was, in part, a note of one Coffin, which defendant had procured to be given to plaintiff; that Coffin had became insolvent, and the note was not paid. The court, after stating the rule of law, which is quoted in a former part of this opinion, proceeded to say: "There is no evidence in this case that the plaintiff agreed to run the risk of the solvency of Coffin, and to take the note as absolute payment, except it be the

inference arising from the receipt itself, and that is not enough to establish such a positive agreement."

Reference is then made to the case of *Murray* v. *Gouverneur*, 2 Johns. Cas. 438, 1 Am. Dec. 177, decided by the court of errors of New York, where it was held that a receipt of a bill as cash was not sufficient evidence that the bill was taken as an absolute payment. See also, on the point, the following cases: *McMurray* v. *Taylor*, 30 Mo. 267; 77 Am. Dec. 611; *Glenn* v. *Smith*, 2 Gill & J. 493; 20 Am. Dec. 452; *Muldon* v. *Whitlock*, 1 Cow. 306; 13 Am. Dec. 533; *Putnam* v. *Lewis*, 8 Johns. 389.

A receipt in full means in full payment, or payment in full. If such a receipt, so drawn, does not establish an agreement for an absolute payment, we cannot see how the language used by the witness De Guigne in this case can establish any such payment, or anything more than a conditional payment, when a check is accepted as payment in the usual course of business.

We are of opinion that the instruction under consideration was abstract, as there was no evidence to base it on, that it was calculated to mislead the jury, and that the court erred in giving it.

We will add here that the verdict in this case was general for the defendants, and it does not appear, nor can we ascertain, whether the jury rested their verdict on the fact found by them, that the plaintiff's dealings were with Helmrich and Hansen as principals, or on the fact that plaintiff dealt with Dresbach and his partner as principals, through Helmrich and Hansen as agents, and that the debt sued for had been paid by the acceptance of the check above mentioned. If it had appeared that the verdict was based on the last ground, we would have ordered a new trial for insufficiency of the evidence to justify it. But as it might have been based on the ground first above stated, on which the evidence was

conflicting, we have denied the new trial asked, for insufficiency of the evidence.

It is urged by plaintiff that the court below erred in giving the following instruction: —

"A receipt is always open to explanation, and the purpose for which it is given may be shown. If you believe from the evidence that the five receipts in evidence were given by the book-keeper of defendants as mere memoranda or vouchers, to be used as such by Helmrich and Hansen, and were so given without the knowledge, authority, consent, or subsequent ratification of the defendants, then the defendants are not liable thereon."

It appears from the testimony of Mehlert that these receipts for money which were paid to Dresbach by Helmrich and Hansen were previously drawn "received of Helmrich and Hansen." They were given to the parties just named when Dresbach received money of them, which was procured on the mate's receipts. Mehlert was the principal clerk and book-keeper of Dresbach, and the signing of these receipts was in the line of his duties. These receipts were given and signed "William Dresbach, — Mehlert," or by "Mehlert." At one time, some of these receipts came back to Dresbach's office. They were drawn "received of Comptoir d'Escompte de Paris," and not, as formerly, of William Dresbach. Mehlert noticed that there was stamped on them, "Received of the Comptoir," and he kept them, and soon after he saw Helmrich and asked him why this change was made, to which he replied: "O, well, I have a certain reason. It don't amount to anything. They are only memorandum. I keep them here in the office." Owing to this explanation, he went on and signed them as before. He understood from Helmrich that they were memoranda to be kept in the office of his firm, to enable them to keep track of their business, for the convenience of keeping their accounts and books. He never asked Dresbach for authority to sign these receipts. He did

not regard them as of importance.   They were mere routine business;   did not think the change in the receipts made any change in the business, and therefore did not ask Dresbach for any authority to sign them when changed, but signed them as he did before.   The change had been made from previously to September, 1882. There was evidence tending to show that Dresbach did not know of the change in the receipts.   This change was in the five receipts referred to in the instruction.

The first part of the instruction enunciates a well-established legal rule.   The counsel for plaintiff do not controvert this rule.   But they say that these were not ordinary receipts;   that " they were express admissions in writing, of the receipt of so much money from plaintiff."

That these receipts purport on their face to be such admissions, there can be no doubt.   Such is the character of all receipts.   They are, or purport to be, admissions of the receipt of money, or property of some kind, but they are, as all admissions usually are, explainable by parol testimony.

The plaintiff put these receipts in evidence to show an admission by Dresbach that he had received so much money from plaintiff.   The evidence of Mehlert was to show the contrary, that they were not given as such admissions, but as memoranda to be retained by Helmrich and Hansen in their office, to enable them to keep track of their business, so as to keep properly their books and accounts;   that they were not intended to show any change in their business, or that they were getting money from any other person than Helmrich and Hansen.

The testimony of Mehlert on these points was not objected to by plaintiff.   We can see no error in this instruction.

The court merely said, in substance, that if the jury believed this explanation, and that the receipts had been given in the form used, without the knowledge,

authority, consent, or subsequent ratification of defendants, the defendants are not liable on them.

We think the court was correct in this view of the law, — that if the explanation given by Mehlert of those receipts was true, plaintiff could not charge defendants on the admissions appearing on their face.

We see no error in allowing the questions put to Waterman and Corde.

This evidence was offered to show that Helmrich and Hansen, as principals, had furnished money to Waterman & Co., and not as brokers, — and was admissible to rebut the testimony of De Guigne, a witness for plaintiff and plaintiff's manager, that Helmrich and Hansen furnished money to Waterman & Co. as brokers, and not as principals, and to rebut, also, the following testimony of Helmrich, offered by plaintiff:—

" We [referring to the firm of Helmrich and Hansen] were doing a general brokerage business. We were not furnishing Waterman and others money at the same time as principals. We did not furnish money as principals."

We think that for this purpose the questions were properly allowed.

We have in the foregoing passed on all the points discussed by counsel in their briefs.

For the errors above pointed out, the judgment and order must be reversed, and the cause remanded for a new trial, in accordance with the views herein expressed.

Ordered accordingly.

SEARLS, C. J., McFARLAND, J., SHARPSTEIN, J., and WORKS, J., concurred.

PATERSON, J., dissenting.—I am unable to agree with the majority of the court in the conclusion reached in this case. The instruction given by the court below embodies substantially, in my opinion, the principle of law enunciated in the opinion. There must be an express understanding or agreement that the note, bill, or check

is given and accepted in payment and satisfaction of the debt; the mere taking or receiving of the check and giving of a receipt by the payee is not sufficient. The court told the jury that if the check was "*accepted* by a creditor, by his own voluntary act or choice, *as payment in satisfaction of a debt,* such *acceptance* would establish payment of such debt." There can be no acceptance without a proposal. Acceptance is defined to be " an agreeing to terms or proposals by which a bargain is concluded and the parties bound; . . . . and agreeing to the act or contract of another by some act which binds the person in law. . . . . To *receive* describes simply the act of taking. To *accept* denotes the taking, . . . . for the purposes for which a thing is offered." (Webster's Dictionary, " Accept," " Receive.") I cannot see that the phrase " by his own voluntary act or choice" qualifies or restricts this clear and well-understood meaning of the word " accepted."

I do not think the court erred in refusing to give the instruction asked by plaintiff, and quoted in the opinion of the court. It in effect, if given, would have said to the jury that there could be no *acceptance* except upon the condition that the check be paid.

So far as the question of the sufficiency of the evidence to support the instructions given to the jury is concerned, it seems to me that we cannot, without invading the province of the jury, say that it is insufficient. I do not understand that it is necessary there should have been express words used by the parties agreeing that the check should be taken in absolute payment. The circumstances, the language and conduct of the parties, all taken together, may show an express understanding between the parties that the check is taken in satisfaction of the debt. This seems to be peculiarly a case in which the facts ought to be left to a determination by the jury.

Rehearing denied.